UNITED STATES of America, Plaintiff,

v.

Kevin Patrick MULLINEX, Defendant.

Crim. No. 80–40.

United States District Court,
E. D. Kentucky.

Dec. 2, 1980.

John M. Compton, Asst. U. S. Atty., Lexington, Ky., for plaintiff.

Frank E. Haddad, Jr., Louisville, Ky., Christopher S. Combs, Irvine, Ky., for defendant.

## MEMORANDUM OPINION

SCOTT REED, District Judge.

The defendant, Kevin Patrick Mullinex, moves the Court to suppress "all evidence obtained, either directly or indirectly, as a result of a search conducted on the Defendant's premises on August 27, 1980" in Estill County, Kentucky. The defendant asserts as his grounds for suppression: (1) that the police officers lacked consent or exigent circumstances to justify the warrantless search, (2) the police officers placed the defendant under custodial arrest without an arrest warrant, (3) the aerial surveillance of defendant's property on August 26, 1980 constituted an illegal invasion of his reasonable expectation of privacy, and (4) the search was not justified under the open fields doctrine.

The United States admits: (1) that there was an aerial surveillance of defendant's property on August 26, 1980, (2) that officers of the Kentucky State Police [KSP] did not have a search warrant at the time the evidence was seized, and (3) the property searched had limited physical access.

The evidence at the suppression hearing indicated that the KSP had conducted an aerial overflight of the defendant's farm just before dark on August 26, 1980. During this flight a field of marijuana was spotted on the defendant's farm. This aerial surveillance was conducted after an informant gave information to the KSP that he had previously purchased marijuana on that particular farm. At approximately 7:30 a. m., August 27, 1980, ten officers of the KSP arrived at the defendant's farm. Detective Brown testified that he observed marijuana sticking up over the top of the corn stalks when the officers drove up in a

four-wheel drive vehicle. On cross-examination this officer stated that he saw two signs, either "Keep Out" or "No Trespassing," when they drove through an open gate up to the farm house. However, he did not know whether he was on Mullinex property when he saw the tops of the marijuana plants. This officer also admitted that he did not seek out anyone to attempt to obtain a search warrant. Apparently as justification for this over-sight, he stated that it had taken two days to obtain a search warrant in this county in another case.

Upon arrival at the farm house the KSP officers detained the defendant and his girl friend for over an hour while they conducted their search for marijuana. During this detention an officer asked the defendant for the keys to the barn. The defendant replied that he did not have any keys to the barn. The officer then asked defendant for his keys, which did not fit the locks on the barn door. The officers, however, were able to get into the barn through a loft where they found 200–300 pounds of dried marijuana. The officers also located approximately .2 of an acre of marijuana in one of the corn fields.

Officer O'Donnell of the KSP testified that the flight over the farm lasted approximately five minutes and at its lowest point was 200 feet above the farm. He stated that their information indicated that there was to be a marijuana buy in the thousands of dollars. He also admitted that they did not make any effort to obtain a search warrant. Officer O'Donnell did see a no trespassing sign on the gate post leading to the farm house.

The defendant's girl friend testified that there were several no trespassing signs at the entrance to the defendant's farm. She stated that usually the planes went straight over the farm and that large B–52 bombers frequently flew over the farm. She estimated that the KSP plane flew 25–30 feet over the corn field. She testified that they were detained for two hours during the approximately four hours that the officers were on the farm. However, she admitted that neither she nor the house were searched and that no officer told them that they were under arrest.

At the conclusion of the suppression hearing the Court ruled that: (1) the defendant had established a sufficient expectation of privacy in the house and outbuildings to contest the legality of the search, (2) the KSP officers had sufficient time to obtain a search warrant because of the information they had concerning the drug buy, and (3) the United States had failed to establish by competent evidence that there existed exigent circumstances to justify the absence of a search warrant.

An order was then entered which suppressed all evidence concerning the marijuana which was found in the barn. The Court took under advisement defendant's motion to suppress as it pertained to the remaining evidence.

The issue remaining is whether the aerial surveillance of defendant's farm and Detective Brown's observation of the marijuana when he was on the Mullinex property constituted an unreasonable search and seizure under the Fourth Amendment and, therefore, should be suppressed.

The United States argues that the open fields doctrine eliminated the necessity for a search warrant of the defendant's farm. The defendant, understandably, objects that the aerial surveillance constituted an illegal intrusion into his reasonable expectation of privacy under the Fourth Amendment.

The United States Supreme Court first enunciated the "open fields" doctrine in *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), where they stated, "the special protection accorded the Fourth Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields." It has been argued that the open fields doctrine was reconsidered in *Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) where the Court Stated:

[T]he Fourth Amendment protects people, not places. What a person knowingly

exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection .... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. (citations omitted).

This Court recently reviewed the open fields doctrine in *United States v. Noe*, 494 F.Supp. 1032 (E.D.Ky.1980) and adopted the Fourth Circuit's post-*Katz* interpretation of *Hester*: "The maxim of *Katz* that the fourth amendment protects 'people not places' is of only limited usefulness for in considering what people can reasonably expect to maintain as private we must inevitably speak in terms of places." *Patler v. Slayton*, 503 F.2d 472, 478 (4th Cir. 1974).

In *Noe* the officers were rightfully on the premises, pursuant to a search warrant, when they discovered two 30 pound bales of marijuana and a 12 pound bag of marijuana in an open field behind the defendant's house. The defendant argued that the description in the search warrant of the place to be searched, a "yellow two story house," did not authorize the officers to search the field behind the house. This Court opined that, "if the seizure was made under the so-called 'open fields' exception to the Fourth Amendment or was seized from a place in which the defendant had no expectation of privacy, as that term is interpreted later herein, then whether the area from which it was taken was or was not properly described in the warrant becomes irrelevant." *Noe, supra*, at 1034. We found that whatever subjective expectations of privacy the defendant had in the open field behind his house it would not be an expectation that society would consider reasonable.

The opinion in *Noe* follows the often quoted rule formulated by Justice Harlan for finding a constitutionally protected reasonable expectation of privacy. Justice Harlan stated that there was a two-fold requirement:

first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as

"reasonable." Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable. Cf. *Hester v. United States, supra.*

*Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (concurring opinion).

The final analysis is that "open fields" are *not* per se outside the protective boundary of the Fourth Amendment, but a defendant's expectation of privacy in an open field must be an expectation that society would consider as reasonable. If the Court finds that the defendant could not have a reasonable expectation of privacy in the area where the seizure was made, in this case an open field, then he does not have the protection of the Fourth Amendment. *Katz, supra.*

In this case the defendant could not have a reasonable expectation of privacy from aerial surveillance regardless of the remoteness of the farm or his effort to conceal the marijuana from road-side view. Even his girl friend testified that airplane flights over his farm were not unusual. What was exposed to police aerial surveillance was also exposed to the public.

The Court in *United States v. DeBacker*, 493 F.Supp. 1078, 1081 (W.D.Mich.1980) reached a similar conclusion:

[D]efendant's relatively minor expectations of privacy do not outweigh the value to society in permitting such non-intrusive surveillance. The police were in a place they otherwise had a right to be, and defendant's fields were plainly observable from the air. Merely because defendant neatly planted contraband in places not observable from the road doesn't mean that all surveillance of the property thereafter is foreclosed. The

Fourth Amendment prohibits unreasonable searches and seizures, not all searches and seizures.

*Accord, State v. Stachler,* 570 P.2d 1323 (Hawaii, 1977) ("one growing a crop in an open field would not expect privacy from overflight").

 The defendant has called the Court's attention to the unpublished opinion of the Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, in *United States v. Oliver,* No. CR–80–00005–BG (W.D.Ky. Nov. 18, 1980). It is the defendant's contention that Judge Johnstone's opinion is dispositive of the case before this Court. Though we think the opinion is sound as to the facts presented in that case, the same analysis cannot be applied to the present case. In *Oliver,* Judge Johnstone stated: "The officers did not see any marijuana until they went around the locked gate posted with a no trespassing sign, and then walked several hundred yards . . . . They first observed the marijuana only when they finally reached the field itself . . . ." *Id.* slip op. at 2. In the present case the police officers first observed the marijuana from a legally permissible place of observation. Since the defendant did not have a reasonable expectation of privacy from aerial observation the mere technical trespass of Detective Brown on the private road of the defendant did not convert a reasonable investigation into an unreasonable search. Cf. *United States v. Conner,* 478 F.2d 1320, 1323 (7th Cir. 1973).

We note the Fourth Circuit in *United States v. Ramapuram,* 632 F.2d 1149 (1980) upheld the warrantless search of a trunk of a "junked" car which was located in an open field. Though the police officers had probable cause to search the "junker" they made no effort to obtain a search warrant. The officers left the public road and entered the farm along a narrow private road. The officers searched the "junker" in the open field which the Court termed "an area totally without the protection of the Fourth Amendment." Although the defendant had a subjective expectation of privacy in the trunk of the "junker" the Court held that this expectation was not objectively reasonable.

Therefore, the Court finds that the aerial surveillance of defendant's farm did not constitute a violation of the Fourth Amendment. Consequently, defendant's motion to suppress as it applies to the aerial surveillance and Detective Brown's observation of the marijuana from the road is denied. However, the Court will suppress all evidence as to the 200–300 pounds of marijuana found in the barn loft and the one marijuana plant which was growing next to the barn since it can reasonably be regarded as part of the curtilage.

A separate order will be entered in conformity with this opinion. The foregoing will constitute the findings of fact and conclusions of law of the Court insofar as such are required.