Argued and submitted November 17, 1980, reversed and remanded
for trial April 27, reconsideration denied June 25,
petition for review denied July 21, 1981 (291 Or 368)

STATE OF OREGON,
*Appellant,*
*v.*
TERENCE STEPHEN DAVIS,
*Respondent.*

(No. 79-1457-C, CA 18051)

627 P2d 492

Robert C. Cannon, Assistant Attorney General, Salem,
argued the cause for appellant. With him on the brief were

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Richard K. Lane, Grants Pass, argued the cause for respondent. With him on the brief was Brown, Hughes, Bird & Lane, Grants Pass.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

The state appeals the trial court's suppression of marijuana seized pursuant to a search warrant. The warrant issued after the marijuana was observed growing on defendant's property by a police officer engaged in aerial surveillance in southern Josephine County.

The trial court found that the officer was in a fixed-wing aircraft flying at 600 to 700 feet above ground level during the surveillance; that the area observed had at least 50 to 75 homes, a school, a medical clinic and a store within a one-mile radius; that the defendant had posted "no trespassing" signs and maintained a locked gate on his driveway; and that defendant's property was in a "wooded and secluded area." It appears from the testimony that there were two residences on defendant's property. The marijuana patch was between 150 to 300 feet from these dwellings.[1]

The defendant successfully contended below that this aerial observation violated the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures,[2] and, therefore, the search warrant based on the observation was invalid.

■     We must determine in this case whether the aerial observation constituted a "plain view" exception to the Fourth Amendment prohibitions against unreasonable searches and seizures under the test enunciated in *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). According to *Katz,* only if there is an actual (i.e., subjective) expectancy of privacy which society is prepared to recognize as "reasonable" does the search fall under the purview of the Fourth Amendment.[3]

---

[1] It is difficult to tell from the transcript the proximity of the marijuana to the dwellings with any accuracy. The diagram of the relationship between the patch and the dwellings was not introduced into evidence.

[2] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[3] *See* 1 LaFave, Search and Seizure, 242, § 2.2, for an explanation of the difference between intrusive plain view searches of the *Coolidge* variety and nonsearch plain view observations of the *Katz* variety. *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967).

The trial court concluded from the altitude of the airplane and the population of the area that the airplane was in violation of FAA regulations regarding the minimum altitude for fixed-wing aircraft.[4] In applying the two-pronged test of *Katz,* the trial court concluded, first, that the defendant had a subjective expectation of privacy, and second, that society was prepared to recognize this as a reasonable expectation. It reasoned as follows:

> "The [FAA] regulations * * * seem to answer the inquiry relative to the second prong in that it is apparent that society, through its insistence upon such regulations, is saying that they [sic] will not allow aircraft in the defined areas. If so, is it then not reasonable to say that society has accepted the right of the resident below to assume that he is protected as to his safety, convenience and activities from such overflights? I think so. * * * The defendant has a reasonable expectation to privacy. The search is therefore illegal and invalidates the subsequent warrant and the evidence must be suppressed."

■■ We agree with the trial court's conclusion that defendant did display to some extent a subjective expectation of privacy, evidenced by the posting of "no trespassing" signs and the use of a locked gate across the driveway to the secluded property. However, we disagree with the trial court's use of the FAA regulation as the determinative

---

[4] The regulations of the Federal Aviation Administration, 14 CFR § 91.79 (1980), provide:

"Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

"(a)   *Anywhere.* An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.

"(b)   *Over congested areas.* Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.

"(c)   *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

"(d)   *Helicopters.* Helicopters may be operated at less than the minimums prescribed in paragraph (b) or (c) of this section if the operation is conducted without hazard to persons or property on the surface. In addition, each person operating a helicopter shall comply with routes or altitudes specifically prescribed for helicopters by the Administrator.

factor for establishing the parameters of Fourth Amendment protection in situations involving aerial surveillance.

The trial court's application of the FAA regulation is not an appropriate method of analysis in the search and seizure area for several reasons. It provides a mechanical approach to search and seizure issues — one merely determines whether an aircraft was above or below the prescribed minimum altitude, and Fourth Amendment protection is or is not afforded based on this demarcation. Although this approach is seductive, due to its ease in application, it thwarts the Fourth Amendment analysis developed in *Katz.* The *Katz* test was developed to avoid a mechanical approach to Fourth Amendment analysis; the Supreme Court rejected a talismanic solution to Fourth Amendment problems produced by the "incantation of the phrase 'constitutionally protected area.' " *Katz v. United States, supra,* 389 US at 350. This court rejected the old "open fields" doctrine for the same reason — to avoid a mechanical analysis. *State v. Stanton,* 7 Or App 286, 295, 490 P2d 1274 (1971). We cannot return to a mechanical test in aerial observation cases and thereby short-circuit the analysis developed in *Katz.*

We also find little attraction in the idea of using FAA regulations because they were not formulated for the purpose of defining the reasonableness of citizens' expectations of privacy. They were designed to promote air safety. If the state had made the claim that FAA regulations serve as rules for individuals' reasonable expectation of privacy, we would reject it. We do the same when that claim is urged by defendant.

Lastly, we wish to point out that the FAA regulations distinguish between the types of aircraft involved. The regulation in this case was applied to a fixed-wing aircraft. The regulation allows helicopters to be flown at lower altitudes. To use the regulation would make "a crazy quilt" out of the Fourth Amendment, with the "pattern of protection" being dictated by the type of aircraft used for surveillance. *Smith v. Maryland,* 442 US 735, 745, 99 S Ct 2577, 61 L Ed 2d 220 (1979).

■     The aerial observation did not violate the Fourth Amendment to the United States Constitution. The marijuana was observed in plain view.

Reversed and remanded for trial.