Mary IZZARD and Jeffrey IZZARD
*v.* STATE of Arkansas

CA CR 83-95                    663 S.W.2d 192

Court of Appeals of Arkansas
Division II
Opinion delivered January 18, 1984
[Rehearing denied February 15, 1984.]

*Jack Holt, Jr.,* for appellants.

*Steve Clark,* Atty. Gen., by: *Marci L. Talbot,* Asst. Atty. Gen., for appellee.

TOM GLAZE, Judge. Appellants appeal their convictions for manufacturing marijuana. They were both sentenced to eight years in the Department of Correction and fined $5,000 each. Appellants contend the trial court erred in (1) denying their motion to suppress, (2) refusing their motion for mistrial, (3) admitting certain value testimony pertaining to the seized marijuana, and (4) refusing to grant their motions for separate trials on both the guilt-innocence phase and the sentence phase of their case. We affirm.

Appellants first argue that the marijuana field discovered on their property is entitled to Fourth Amendment protection. Citing the test earlier adopted by this Court in *Gaylord* v. *State,* 1 Ark. App. 106, 613 S.W.2d 409 (1981), appellants contend they exhibited a reasonable expectation of privacy in the field that was searched; therefore, under the existing circumstances, the court should have suppressed all the evidence derived from the illegal search. *See also Brown* v. *State,* 5 Ark. App. 181, 636 S.W.2d 286 (1982). One circumstance to which appellant refers is a deputy sheriff's aerial observation of their property. The deputy detected appellant's marijuana field during a helicopter search in the same area for an airplane that reportedly had crashed. While flying about 100 feet above the treetops, the deputy saw what he believed was marijuana, which later was found located on appellant's farm.

In view of the deputy's aerial observation and detection of appellants' marijuana field, we are confronted with the question whether such a helicopter observation constitutes a "search" subject to Fourth Amendment protection. While this question has not previously been addressed by our State's appellate courts, cases from other jurisdictions indicate that warrantless aerial observation of that which is not visible from most places on the ground is not *per se* a Fourth Amendment violation. *United States* v. *Mullinex,* 508 F.Supp. 512 (E.D. Ky. 1980); *Burkholder* v. *Superior Court,* 96 Cal. App.3d 421, 158 Cal. Rptr. 86 (1979); *Costello* v. *State,* 442 So. 2d 990 (Fla. Dist. Ct. App. 1983) (Rehearing denied Jan. 11, 1984); *People* v. *Lashmett,* 71 Ill. App. 3d 429, 27 Ill. Dec. 657, 389 N.E.2d 888 (1979), *cert. denied* 444 U.S. 1081, (1980); *State* v. *Ryder,* 315 N.W.2d 786

(Iowa 1982); *State* v. *Roode,* 643 S.W.2d 651 (Tenn. 1982); *Goehring* v. *State,* 627 S.W.2d 159 (Tex. Crim. App. 1982). The same conclusion has been reached in cases in which warrants were issued as a result of aerial observations of contraband. *United States* v. *DeBacker,* 493 F.Supp. 1078 (W.D. Mich. 1980); *State* v. *Stachler,* 58 Hawaii 412, 570 P.2d 1323 (1977); *State* v. *Davis,* 51 Or. App. 827, 627 P.2d 492 (1981).

In the foregoing cases, the courts refused to suppress the contraband that was seized as a result of aerial surveillance, but in doing so, they gave various reasons. For example, the court in *Mullinex* held that the defendant could not have a reasonable expectation of privacy in the area where the seizure was made because it was an "open field." In *Costello,* the Court determined that because the marijuana was clearly visible from an area not constitutionally protected (the pilot identified it when he flew over defendant's property at an altitude of 500 feet), the defendant had no reasonable expectation of privacy in his marijuana patch. The Tennessee Supreme Court in *Roode* adopted the approach taken by the California courts, *viz.,* "the individual seeking constitutional safeguards must show that the land is used in accordance with the common habits of people engaged in the cultivation of agricultural land who exhibit an expectation of privacy with respect to the pursuit in question." *See People* v. *Saint Amour,* 104 Cal. App.3d 886, 891, 163 Cal. Rptr. 187, 190 (1980). In an earlier Tennessee case, *State* v. *Layne,* 623 S.W.2d 629 (Tenn. Crim. App. 1981), the Court, relying on the reasoning given by the Hawaii Supreme Court in *State* v. *Stachler,* held "that when law enforcement officers are in a place where they have a right to be and as a result thereof observe criminal activity, clearly recognizable as such, on the property of a defendant, the 'open view' exception arises." *Layne, supra,* at 635. In *State* v. *Davis,* the Oregon Court of Appeals justified the aerial surveillance of the defendant's marijuana patch because the surveillance constituted a "plain view" exception to the Fourth Amendment prohibitions against unreasonable searches and seizures. In analyzing this issue, most of the courts attempted to apply the "reasonable expectation or privacy" rule enunciated in *Katz* v. *United States,* 389 U.S. 347 (1967),

which was adopted in Arkansas in *Gaylord* v. *State, supra.* Despite their apparent differences in approaching this issue, each court reached the same conclusion: when the defendants' contraband was viewed from the air by police officers, the defendants had no Fourth Amendment protection, as measured by the *Katz* standard.

In keeping with the *Katz* test adopted in *Gaylord,* we believe that given the facts of this case, the appellants did not have a reasonable expectation of privacy in the open marijuana field where the seizure was made, and accordingly cannot claim Fourth Amendment protection. Regardless of how appellants strived to conceal the marijuana from the view of neighbors or intruders, the field was clearly exposed to police aerial surveillance and therefore to the public as well. *See Mullinex, supra,* at 514. As noted by the Court in *Debacker, supra,* at 1081, "open fields" are not areas in which one traditionally can reasonably expect privacy. Here, appellants' marijuana was initially and inadvertently discovered by a deputy searching for a crashed airplane. While he was in a helicopter 100 feet above the treetops, the deputy saw the marijuana field, which was about 75 feet long by 25 rows wide and located approximately 200 yards from appellants' house. The plants numbered over 400 and some were 20 feet tall. Although appellants argued otherwise, the deputy testified that when he saw the plants, he recognized them as marijuana because they were large, dark green and had leaves with long points. Under the circumstances presented, we believe the aerial observation of appellants' property was not a violation of the Fourth Amendment and the trial court correctly denied their motion to suppress.

Appellants' second point for reversal is that the trial court erroneously denied their motion for mistrial which was based on their contention that the State's attorney improperly questioned the jurors. In sum, they argue the prosecuting attorney utilized *voir dire,* not only for the purpose of "getting acquainted," but to philosophize on matters of politics, drug legislation, leniency of marijuana laws, firm law enforcement, the Sheriff's fight on drug trafficking and ideas about prison.

The purpose of *voir dire* examination is to discover if there is any basis for challenge for cause and to gain knowledge for the intelligent exercise of peremptory challenges. *See,* Rule 32.2, Ark. R. Crim. Pro. (Repl. 1977). The extent and scope of *voir dire* examination is largely within the sound discretion of the trial judge and the latitude of that discretion is rather wide; his restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Finch* v. *State,* 262 Ark. 313, 556 S.W.2d 434 (1977).

In the instant case, the trial judge did not abuse his discretion but instead used it to properly limit the questioning. For example, appellants' counsel objected when the prosecuting attorney asked a juror if he agreed with trickery employed by police in an effort to "flush out" people who purposefully violate the law. The trial judge instructed the prosecutor to stay with the facts of the case; this instruction met with defense counsel's approval. On another occasion, the prosecutor asked a juror whether he knew anybody who had gone to prison. The juror answered affirmatively after which the prosecutor asked if the person was a family member. The juror said, "No," and before the State's attorney could ask how the juror's acquaintance had been treated while in prison, defense counsel objected and moved for a mistrial. The trial judge denied the motion but admonished the prosecutor to stay with the specific charges before the court. On other occasions during *voir dire,* the trial judge sustained defense counsel's objections, and prevented the State's attorney from discussing the "drug business" and from asking whether the jurors had heard or read anything recently on national news concerning marijuana grown in Arkansas.

On the other hand, the State points to the *voir dire* of prospective jurors by appellants' counsel, who delved into matters such as counselling young people and giving them a chance to do right, inquiring whether the Bible "teaches" one to be merciful and asking if the jurors could be merciful if the woman defendant had been a "good mother" to her children. From a review of the *voir dire* proceedings, we conclude that both the State and appellants were allowed an

extensive, broad *voir dire.* We cannot say the trial judge abused his discretion by the manner in which he controlled such examination.

Appellants' next argument is three-pronged: Detective Brugle was not qualified as an expert on the street value of marijuana, he had insufficient data upon which to base an opinion and assuming the admissibility of such value testimony, it was not relevant and therefore was excludable because of its prejudicial impact. We find no merit to appellants' contentions.

Brugle was the deputy who observed appellants' marijuana when he flew over their property in a helicopter. He testified that he had nine years' experience in law enforcement, that he had attended drug investigation schools and that he had worked narcotics and drug violation cases. He also had completed a 37-hour DEA school in drug enforcement and had been involved in at least fifteen or sixteen marijuana cases prior to the appellants' arrest. It is settled law that the determination of an expert's qualification as a witness is within the sound discretion of the trial court, and, absent an abuse of discretion, it will not be reversed. *Harper* v. *State,* 7 Ark. App. 28, 643 S.W.2d 585 (1982). In view of Brugle's training and experience in drug enforcement, the trial court did not abuse its discretion in allowing his expert testimony. Furthermore, because Brugle personally inspected appellants' marijuana field and knew first-hand the quality and quantity of contraband seized, he undoubtedly had sufficient information on which he could formulate an opinion. In determining the relevance of the value testimony given by Brugle, we reviewed *Brady* v. *State,* 261 Ark. 257, 548 S.W.2d 821 (1977), in which our Supreme Court held that when the jury, as in Arkansas, fixes punishment for criminal offenses, evidence in aggravation of or in mitigation of an offense is admissible to assist the jury in arriving at a fair verdict. Brugle testified that one pound of marijuana could be harvested from one plant and that appellants' plants would bring from $1,400 to $1,600 per pound on the street. Such testimony was evidence in aggravation of the offense with which appellants were charged, because it indicated they were manufacturing

marijuana that had a high value — a fact which allowed the jury to perceive both the nature and magnitude of the crime. Unlike the situation in *Brady*, appellants here had the opportunity to rebut the State's street value evidence but did not do so. We find no error in the State's presenting such evidence.

Appellants' final contention is that they were entitled to a bifurcated trial so they could present evidence of extenuating or mitigating circumstances at a separate sentencing proceeding. In brief, the appellants did not choose to testify at the trial on the merits, and because they were not afforded a sentencing trial to offer mitigating evidence, they claim they were denied due process. We disagree. Under Ark. Stat. Ann. § 43-2303 (1977), appellants had the right of allocution. Although appellants indicate by argument that the trial court's common practice is to "rubber stamp" the jury's verdict, they do not argue in this appeal that they were denied the right of allocution. *See Smith* v. *State,* 257 Ark. 781, 520 S.W.2d 301 (1975) (court reversed, finding the defendant was not accorded the right of allocution). Appellants here were afforded by law the opportunity to address the court before sentencing, and they apparently opted not to be heard. We know of no cases that hold or infer that due process requires a separate jury trial for the sentencing phase of a criminal case, nor do the appellants cite such authority. The trial court had no statutory authority to grant appellants' request, and it was clearly correct in denying their motion.

We affirm.

MAYFIELD, C.J., and COOPER, J., agree.