Argued and submitted December 22, 1983, affirmed June 27, reconsideration denied August 31, petition for review denied September 18, 1984 (297 Or 824)

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRISTOPHER MICHAEL BRUNO,
*Appellant.*

(10-82-06451; CA A27778)

683 P2d 1383

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his convictions for unlawful manufacture of a controlled substance and unlawful possession of a controlled substance. ORS 475.992. He contends that the trial court erred in denying his motion to suppress evidence seized from his property and residence pursuant to a search warrant. We affirm.

On May 26, 1982, Officer Tracewell flew a state airplane over rural coastal property 17 miles north of Florence. He observed several cleared areas in a secluded wooded canyon situated one-quarter mile east of Highway 101. The cleared areas were inaccessible by any means other than by walking east up a canyon bottom from property occupied by defendant. Defendant lived on property consisting of two residences, a barn and a greenhouse. He and his girlfriend lived in one house that was located 225 feet east of the highway. Another party lived in the second house 20 to 50 feet east of the highway.

On July 20, 1982, Tracewell and other officers again flew over defendant's property. They made two or three circles in the vicinity of the cleared areas east of defendant's residence. A few days later, Tracewell applied for and received a search warrant. Marijuana and related paraphernalia were seized from defendant's property and residence.

■    Defendant initially contends that the warrantless aerial observations of his property violated his reasonable expectation of privacy and that they amounted to illegal searches into a constitutionally protected area. We hold that the aerial observation was not a search. *See Oliver v. United States,* ___ US ___, 104 S Ct 1735, 80 LEd 2d 214 (1984); *State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971).

■■    Defendant also contends Article I, section 9, of the Oregon Constitution requires that the state make a threshold showing that the aerial observations were based on a preexisting agency scheme, law or judicial approval, and that minimization principles were applied. There is no need for the state to "systematize" or "minimize" investigatory procedures when there is no invasion of a constitutional right.

Defendant next contends that the affidavit for the search warrant fails to establish probable cause. He argues that the affidavit lacks the necessary particularized identifying facts in that it fails to establish that the plants were growing on his property and that there was a nexus between the plants and the two houses and various buildings on the property. In *State v. Anspach,* 68 Or App 164, 682 P2d 786 (1984), a case involving an aerial search, we held that, in order to support a warrant to search a residence or outbuilding, an affidavit must fulfill two requirements. First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the person residing on the premises has some relationship to the marijuana plants. Second, it must contain additional facts to support probable cause to believe that marijuana, implements of cultivation or paraphernalia for the processing or sale of marijuana are in the building to be searched. *See State v. Harp,* 68 Or App 666, 685 P2d 432 (1984).

■ ■ The first *Anspach* requirement is met by the statement in the affidavit that the driveway and adjoining buildings on the property occupied by defendant were the only point of access to the location where the marijuana was observed and that there were no other houses, buildings or trails in the vicinity of the marijuana plants.[1] The second

---

[1] The affidavit states:

"I, Ronald K. Tracewell, being first duly sworn, do hereby depose and say:

"That I am a deputy sheriff employed by the Lane County Sheriff's Office and have been so employed for the past ten years, and that I am presently assigned as the resident detective for the Florence patrol district;

"That I have had in excess of 100 hours of formal training and schooling in the identification of controlled substances, including identification of marijuana in its various forms, including its growing stages from seed to adult plant, its cut, dried form, and its processed and manicured form;

"That I have had over 2,000 hours of field training and experience in the identification and seizure of marijuana, which has resulted in my having been personally involved in the seizure of over four tons of marijuana;

"That I have seized marijuana in both its growing state and its processed state on over 100 occasions, and have had my opinion concerning this substance confirmed by subsequent laboratory analysis on every occasion;

"That on approximately fifteen occasions I have identified marijuana plants from aircraft, with unaided eyes, while flying above minimum Federal Aviation Administration altitudes, and have had my opinion concerning this substance confirmed by subsequent laboratory analysis on every occasion;

*Anspach* requirement is met by the affiant's statement based on his training and experience. We conclude that the facts stated in the affidavit are sufficient to establish probable cause.

"That based upon my training and experience in the field of controlled substance violations, I have learned that it is necessary to perform certain acts when growing marijuana: this includes the use of certain tools and equipment, including sponges and shallow pans for sprouting the seeds; flower pots, fertilizers and ultraviolet lights for stimulating the growth of the young plants; tools to clear the ground and turn and cultivate the soil, fertilizer to enrich the soil; that the processing of marijuana into a usable form is accomplished by removing the leaves from the plant, drying them inside buildings where they cannot become damp or wet, using shallow pans, trays and ropes or wires to pan-dry or hang-dry the leaves; the dry leaves are then manicured by spreading them out in shallow pans or trays so that the stems and seeds can be removed; that plastic bags are then used to package the marijuana;

"That my training and experience has further taught me that the common procedure used in the growing of marijuana is to start the plants from seeds inside a residence with the aid of ultraviolet lights; to move the young plants into a greenhouse or to an outdoors location where there is sunshine when they are several inches high, transplanting them from flower pots to large plastic buckets; to subsequently remove the plants from the plastic buckets when they are several feet high, then planting them in their final growing location;

"That the final growing location is a place where there is ample sunlight and usually a nearby water supply; that the watering process of the plants is usually supplemented by the use of artificial dams, reservoirs, water pumps and plastic water lines;

"That the final growing location is usually situated in relatively close proximity to the residence of the grower and connected to the immediate area of the grower's residence by footpaths, trails, roads or driveways; that the final growing location is usually secluded from public view; that there will frequently be a number of smaller growing locations in close proximity to each other rather than one large growing location; that the final growing location or locations herein above-described are frequently situated by the grower without regard to property lines, some final growing locations being located on the grower's property, other final growing locations being situated in relatively close proximity to the grower's residence yet across a property line and on the property of another;

"That on May 26, 1982, I flew over property located approximately seventeen miles north of Florence; that I observed a canyon that runs generally east and west; that there is a small stream flowing along the bottom of the canyon; that approximately one-quarter mile east from highway 101 and on the south side of the canyon and very close to the canyon bottom and the stream were several areas that had been cleared from surrounding foliage and timber; that these areas are very secluded [and] appear to be inaccessible by any means except by walking east up the canyon bottom from a small cluster of buildings that share a common driveway and are located along the east side of highway 101; that these buildings appear to consist of two houses, a garage, and several outbuildings located along a short driveway that runs east from highway 101; that access to the canyon and stream appears easily accessible from the middle and east south-east portions of the driveway;

"That while flying over the above-mentioned areas on May 26, 1982. I took several photographs of these areas;

■ Defendant contends finally that, because there were two independent residences on the parcel of property described in the affidavit, the affidavit must contain facts either describing which of the two houses was to be searched or facts showing that the residents of both houses were somehow involved in marijuana cultivation. The affidavit

"That on July 20, 1982, I again flew over the above-described location, at which time I observed numerous marijuana plants growing in the same cleared, cultivated areas along the canyon bottom as previously described herein; that the driveway and adjoining buildings appear to be the only point of access to the location where the marijuana was observed, and that there are no other houses, buildings or trails in the vicinity which would provide reasonable access to the location of the marijuana;

"That I have attached to this affidavit two photographs, designated as exhibits A and B, that depict the location of the marijuana-growing area and the location of the houses and buildings heretofore mentioned;

"That in addition to the tools, implements and items previously mentioned herein as necessary and customary for the growing of marijuana, I know by training and experience that it is necessary to use buildings and structures for the purposes of drying and processing marijuana, and also for storing tools and implements necessary to its cultivation;

"That I know from past experience that it is common for persons growing marijuana in the quantity observed to possess irrigating schedules, ledger books, and publications concerning the growing and processing of marijuana;

"That on July 21, 1982, I drove north from Florence on Highway 101 to the location of the driveway and houses and buildings previously mentioned herein; that I measured the distance of the driveway from milepost number 172 and found the driveway to be located at milepost 172.6; that I observed there to be a single mailbox located on the west side of Highway 101 directly across from the driveway; that the mailbox has the numbers 94667 on the north side of it.

"Based on the above-stated information, your affiant has probable cause to believe that marijuana, a controlled substance, is presently being grown, processed and kept at the above-described location.

"WHEREFORE, your affiant prays this court issue a warrant for the search of all houses, building structures, vehicles and curtilage of the residence or residences located on the east side of Highway 101 at approximately milepost number 172.6, and further being described as 94667 Highway 101, and including the area one hundred yards to the north of the above-mentioned stream and an area one hundred yards south of the above-mentioned stream, from the junction of the stream and Highway 101 on the west to a distance of one-quarter mile east of Highway 101, and including those areas circled by black ink on the attached photographs which are designated as exhibits A and B, for the controlled substance marijuana and evidence of its cultivation, manufacture and possession; all above-described areas being within Lane County, Oregon.

"* * * * *"

Two aerial photographs were attached to the affidavit as exhibits.

contains facts sufficient to show that marijuana was being cultivated by occupants of at least one of two adjacent residences in a secluded location. The two residences shared a common mailbox, driveway, garage and other outbuildings. The magistrate could reasonably have found that probable cause existed to search either residence or both as reasonable places to search. *See State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983).

Affirmed.