Argued and submitted June 25, affirmed November 21, 1984, reconsideration denied January 11, petition for review denied February 12, 1985 (298 Or 704)

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL ALAN FARKES,
*Appellant.*

(No. 82-09-2052; CA A30196 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

CONSUELO VIRGINIA FARKES,
*Appellant.*

(82-09-2052; CA A30324)
(Cases Consolidated)

691 P2d 489

Richard Lee Barton, Portland, argued the cause for appellant Michael Alan Farkes. With him on the brief were Barton & Loennig, Portland.

John S. Ransom, Portland, argued the cause for appellant Consuelo Farkes. With him on the brief were Ransom, Blackman & Simson, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

In consolidated appeals, defendants seek reversal of their convictions. Both were charged in the same indictment with manufacture (Count I) and possession (Count II) of marijuana. ORS 475.992(1)(a) and ORS 475.992(4)(a). Michael Farkes (Michael) was convicted on both counts, but for sentencing purposes the court consolidated his conviction for possession with his conviction for manufacture. Consuelo Farkes (Consuelo) was convicted of possession but was acquitted of the charge of manufacture. We affirm.

A neighbor's cow wandered on to defendants' farm. With Michael's help, the neighbor retrieved his cow but noticed a hose running out of a pond and up into a group of trees. The neighbor was Lieutenant Martinak of the Linn County Sheriff's office. He suspected that defendants were cultivating marijuana. Deputy Sheriff Parrott then flew an airplane over defendants' property and saw growing marijuana. He obtained a warrant to search defendants' property and buildings, excluding their residence. Parrott's supporting affidavit stated:

"That I am a Linn County Deputy Sheriff assigned to the detective division. I have been a police officer for sixteen years. My experience as a police officer includes training in the recognition of growing and dried marijuana. I also have had special training and experience in the recognition of growing marijuana from the air. In that regard I have piloted * * * aircraft to verify from the air the presence of growing marijuana on several occasions and on each of those occasions where officers were able to go to the location * * * it was confirmed as marijuana.

"Recently, * * * I attended more specialized training seminars in the identification of marijuana from the air. That training, by the Federal Drug Enforcement Agency and the Oregon Narcotic Enforcement Agency included the study of aerial photographs which depicted known areas where marijuana was being grown and also the visual observation of marijuana from a flying aircraft. * * *

"On September 1, 1982 I, along with Linn County Detective Burright and observer Bruce Westfall, was flying a Cessna 172 aircraft searching for marijuana being grown in Linn County. While flying at an altitude of 1500 feet above sea level at about 90 miles per hour in a Northeast direction, Detective Burright observed with his naked eye just to the right of my

aircraft what he believed to be growing marijuana plants. Thereafter I turned right and circled the location. I, at this time, observed numerous growing marijuana plants. This observation was made from approximately 1,000 feet above the ground. The location of these growing marijuana plants were *[sic]* to the northeast of a small man-made irrigation pond. These growing marijuana plants are concealed from public view due to their distance and isolation from a public roadway. Southwest of the growing marijuana plants is a residence with outbuildings. This residence is located at the east end of a driveway that connects to Hamilton Creek School Road. The estimated distance from the growing marijuana plants to the residence is approximately 200 yards.

"Detective Burright has also had experience observing marijuana from the air and he told me that the growing plants near the pond were growing marijuana."

Parrott and several other officers then executed the warrant and seized growing marijuana from defendants' field and a bag of marijuana from their barn. An officer then prepared a second affidavit that incorporated Parrott's earlier affidavit and stated:

"I was informed by Robert Parrott at about 3:00 p.m., on September 1, 1982, that upon executing the [first] search warrant he has found and seized a quantity of growing marijuana from the tax lot and drying marijuana from the barn authorized to be searched by the said warrant, and also based upon my police training and my experience in investigating numerous other cases involving growing marijuana, I have almost inevitably found that when a person grows marijuana, that person will also have inside the residence dried or drying marijuana, and that based upon the information set forth by Robert Parrott's affidavit, which is attached hereto as Exhibit "A" and by this reference made a part hereof, together with Robert Parrott's confirmation to me that marijuana has been seized upon the premises and observed within the residence, I make this affidavit to obtain a warrant to search for dried marijuana, paraphenalia *[sic]*, documentation or other evidence as to what persons are occupants or in control of the premises and residence * * *."

A magistrate issued a second warrant to search the residence "for marijuana, paraphernalia and elements for growing marijuana, and evidence of right to occupy premises." The officers executed the warrant and found in various locations in the

residence quantities of marijuana ranging from less than a gram to about two ounces.

Defendants, who are husband and wife, chose one lawyer to represent them. The prosecutor offered to let Consuelo plead guilty to the Class B felony of possession and Michael to plead guilty to the Class A felony of manufacturing. He advised that he would make no sentencing recommendation if defendants accepted the offers but, if defendants rejected the offers and filed a motion to suppress, he would recommend lengthy incarceration on conviction. Defendants' attorney did not then advise them that their interests differed and that they should seek independent counsel. They rejected the prosecutor's offer and filed a motion to suppress.[1] The court heard and denied the motion.

Defendants agreed to a court trial on a stipulation of facts. The court found defendants guilty as charged. Defendants then each hired separate lawyers and filed a motion to withdraw the stipulation and void the findings of guilt. The court granted the motions, because the stipulation of facts

"was a plea tantamount to a plea of guilty[.] [T]he stipulation would * * * leave no alternative to any Court other than to find the defendants guilty. So, they were not individually addressed with respect to the aspects of having their stipulation stated to be knowingly *[sic]* and voluntary; they were not informed of their right to confront witnesses, and they weren't informed of their right against self-incrimination."·

Defendants' lawyers then jointly, on behalf of both defendants, filed a motion to suppress and/or renew the earlier motion to suppress and a motion to controvert (all of which are the "renewed motion"). The motion papers in each defendant's file are identical. The court refused to hear the

---

[1] The motion asserted that the aerial view of defendants' property without a warrant was improper; that the affidavit supporting the first search warrant did not show probable cause to believe that marijuana was located on defendants' property, because a) it was based on inaccurate and incomplete observations, b) it did not describe the specifics of Parrott's training or the basis of his opinion that he had seen marijuana, and (c) it is impossible to view vegetation from 1,000 feet and form an accurate opinion that it is probably marijuana; and that the affidavit supporting the second search warrant did not show probable cause to believe that defendants' residence contained marijuana. Defendants did not pursue on appeal the motion's further assertion that a hand-drawn circle on a map submitted with the affidavits may have misled the magistrate, because the circle was out of proportion to the actual size of the marijuana patch.

renewed motion. Each defendant was then tried separately before a jury.

Defendants assign as error the court's refusal to hear the renewed motion.[2] ORS 133.673(2) provides:

> "A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

In *State v. Peterson,* 66 Or App 477, 675 P2d 1055 (1984), we held that the court abused its discretion when it refused to hear the defendant's motion to suppress, although the defendant did not file it within the time allowed by local court rules. There was no reasonable likelihood that the defendant's late filing would prejudice the state or disrupt the judicial process. *See also State v. Owens,* 68 Or App 343, 681 P2d 165 (1984). Neither *Peterson* nor *Owens* arose under ORS 133.673(2).

■    Here, however, the court did not abuse its discretion when it refused to hear the renewed motion. It had already heard at length defendants' original motion to suppress. They had the assistance of counsel on the original motion to suppress. They concede that their first lawyer could have raised in the original motion to suppress all the arguments that their new lawyers raised in the renewed motion. Defendants had had a full opportunity to present any constitutional or other claims to support suppressing the evidence. Their interests diverged with respect to the prosecutor's offer, but they were identical with respect to suppression. Neither do defendants assert that there was newly discovered evidence.

---

[2] Defendants' renewed motion incorporated by reference the arguments in the original motion. It also asserted that Martinak's activities on defendants' farm tainted Parrott's aerial observations and, therefore, both the first and second search warrants. *See State v. Schlabach,* 25 Or App 535, 549 P2d 1283 (1976). They also argue that the second search warrant was insufficient, because it was based in part on a misstatement in the second affidavit. That affidavit states "that marijuana has been seized upon the premises and *observed within the residence* * * *." (Emphasis supplied.) Parrott testified at the suppression hearing that the officers had not observed marijuana within the residence. The renewed motion also argued that the affidavit supporting the second search warrant did not show probable cause to believe that "paraphenalia [sic] and elements for growing marijuana" would be found in the residence, that the statement as to Parrott's training and experience was not sufficient to support the belief that marijuana would be found in the residence, that the second search warrant described the "marijuana" to be seized in the house with insufficient particularity and that the search exceeded the scope of the warrant.

The interests of justice did not require, in the circumstances here, that the court hear the renewed motion.

■ Defendants also assign as error the court's denial of their original motion to suppress. We find no error. Parrott's overflight at 1,000 feet and observations of marijuana on defendants' property did not constitute a warrantless search in violation of the Fourth Amendment or of Article I, section 9. We held in *State v. Davis,* 51 Or App 827, 627 P2d 492, *rev den* 291 Or 368 (1981), that such observations do not violate the Fourth Amendment, nor do they violate Article 1, section 9. *See also State v. Bruno,* 68 Or App 827, 683 P2d 1383 (1984). Defendants ask that we reconsider *Bruno* and *Davis* in the light of *dicta* in *State v. Louis,* 296 Or 57, 61, 672 P2d 708 (1983), but we decline to do so.

■■ Parrott's affidavit established probable cause for the first search warrant. It stated facts that show that he identified growing marijuana with the naked eye from an altitude of 1,000 feet. The magistrate could also reasonably have found that the two affidavits supporting the second search warrant provided probable cause to believe that the residence contained marijuana, because of the officers' observation of growing marijuana, of the irrigation pond nearby, of drying marijuana in the barn and of the proximity of the plants to the residence. The affidavits showed probable cause to believe that the persons residing on the premises had some relationship to the growing marijuana. *See State v. Harp,* 68 Or App 666, 685 P2d 432 (1984); *State v. Anspach,* 68 Or App 164, 682 P2d 786, *rev allowed* 297 Or 546 (1984). The affidavits also stated personal experience of the officers sufficient to give the magistrate reason to believe that the officers would find evidence of possession or manufacture of marijuana in the residence.

■■ Defendants also assign as error the court's denial of their motion to dismiss Count I, manufacture of a controlled substance, a class A felony. They argue that ORS 475.992(1) does not require that the defendant *knowingly and intentionally* manufacture a controlled substance, although ORS 475.992(4) requires that the defendants *knowingly and intentionally* possess a controlled substance, a class B felony. They argue, therefore, that the statute omits a culpable mental state for the more serious offense of manufacture and violates the Equal Protection Clause and Article I, section 20. Their claim

is without merit. It is sufficient here to state that the indictment charged, and the state proved, the knowing manufacture of marijuana. *See* ORS 161.105(3);[3] *see also State v. Kelso,* 70 Or App 393, 689 P2d 1307 (1984).

■      Defendants also assign as error that the court refused to instruct the jury in Consuelo's trial on the offense of possession of less than one ounce of marijuana. Assuming that the requested instruction was a correct statement of the law, the court did not err:

> "The single limitation of the right of either the prosecution or the defendant to request lesser-included offense instructions under these statutes [ORS 136.460; 136.465] is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater. * * *" *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975).

*See also State v. Sears,* 70 Or App 537, 689 P2d 1324 (1984). The officers found more than one ounce of marijuana in parts of defendants' residence and barn. The locations of the quantities of marijuana do not support an inference that Consuelo possessed less than one ounce of marijuana, if she possessed any. The jury could not "rationally and consistently" have found her innocent of the greater offense and guilty of the lesser.

■      Defendants also argue that the court erred in Michael's trial in refusing to instruct the jury on the lesser included offense of attempted manufacture of a controlled substance. Defendants assert that there was evidence that the plants were untended. "Manufacture" of a controlled substance includes "production." ORS 475.005(14). "Production" includes "planting, cultivation, growing or harvesting of a controlled substance." ORS 475.005(19). The 32 marijuana

---

[3] ORS 161.105(3) provides:

"Although an offense defined by a statute outside the Oregon Criminal Code requires no culpable mental state with respect to one or more of its material elements, the culpable commission of the offense may be alleged and proved, in which case criminal negligence constitutes sufficient culpability, and the classification of the offense and the authorized sentence shall be determined by ORS 161.505 to 161.605 and 161.615 to 161.655."

plants growing on defendants' property were five feet to ten feet tall and were located near a water pump and a hose that led from a pond to the plants. Even if "untended" at the time the officers observed the plants, they had been planted, cultivated and grown. The jury could not rationally find that Michael had merely attempted to manufacture marijuana. A "lesser included" instruction was not warranted. *See State v. Naylor,* 291 Or 191, 629 P2d 1308 (1981); *State v. Washington, supra.*

■     The court imposed as conditions of probation a fine of $3,000 on Consuelo, payable in monthly installments of $50, and a fine of $2,500 on Michael, payable in monthly installments of $75. They argue that the court failed to find that either defendant had the ability to pay his or her fine or the effect of the combined fines on their ability to pay. *See* ORS 161.645. The court, however, considered each defendant's ability to pay.[4]

■     Defendants further assign as error that, as further conditions of probation, the court imposed 15 days' incarceration for Michael and 48 hours' incarceration for Consuelo. They argue that the prosecutor's sentencing recommendations were "vindictive." Consuelo did not raise the issue at her sentencing hearing. Michael's attorney stated that the prosecutor had "threatened if Mr. Farkes exercised his rights to a jury trial and filed a Motion to Suppress that he, the District Attorney, would recommend a jail sentence." The trial court found no "objective proof of actual vindictiveness." Even if Michael raised the issue, it lacks merit. *State v. Halling,* 66 Or App 180, 672 P2d 1386 (1983).

■     Defendants finally assign as error that, at the sentencing hearing, the trial court admitted hearsay evidence that defendants had committed another crime of delivery of marijuana. *See* ORS 137.080. The assignment is without merit. Except for an estimate of expenses for a trip that defendants took to New Zealand that was admitted without hearsay objection, the evidence to which defendants refer was information already before the court in the presentence report.

Affirmed.

---

[4] The court held a single sentencing hearing for both defendants.