Argued and submitted April 29, affirmed June 29, 1981

# STATE OF OREGON,
## *Appellant,*

### *v.*

# CHRIS LEE BLACKER,
## *Respondent.*

## (No. C-2027, CA 19504)

### 630 P2d 413

Douglas W. Johnson, Deputy District Attorney, Baker, argued the cause for appellant. With him on the brief was Ken Hadley, District Attorney, Baker.

John Daugirda, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

**YOUNG, J.**

The state appeals from a pretrial order suppressing evidence seized during a search of defendant's house pursuant to a search warrant. We affirm.

The Baker office of the state police received information from informants that defendant was growing marijuana at his home. In order to corroborate the informants' information, the police observed the defendant's home from a vantage point along U. S. Hwy 30. The home is in a rural area and adjacent to the highway. The nearest neighbor is more than a mile away. A state trooper parked along the highway an estimated 50 yards from defendant's house. From that location and with the aid of a spotting scope, which magnified 16 to 36 times, the trooper visually examined the premises. Using the scope to look into a second story window of the home, the trooper saw what he recognized to be a growing marijuana plant. Based on the foregoing facts the search warrant issued, the home was searched and defendant was arrested.

The trial court found that "the marijuana plant * * * was not visible with the naked eye * * *" from the public highway. The evidence supports that finding, and it will not be disturbed by this court. *Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).[1]

The trial judge found that the surveillance of defendant's home with the aid of optics constituted an invasion of defendant's reasonable expectation of privacy, and hence, was unconstitutional.[2] The question on appeal is whether a police officer's telescopic observation of a marijuana plant, located in the interior of defendant's residence, violates a reasonable expectation of privacy, which in turn violates the Fourth Amendment's prohibition against unreasonable searches. If the optically aided original observation was unlawful, the evidence obtained by

---

[1] It is clear from the record that the officer did not observe any other marijuana on the premises from his initial observation point with or without optics.

[2] Because the trial court suppressed the evidence on the ground that the telescopic viewing constituted a warrantless search, it did not reach the other grounds set forth in the motion to suppress or rule on defendant's other motions.

the subsequent search and seizure pursuant to the warrant would be subject to suppression. *Wong Sun v. United States* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Corbett,* 15 Or App 470, 516 P2d 487 (1973), *rev den* (1974).

■■ An observation constitutes an unlawful search when made into a constitutionally protected area. An area is "constitutionally protected" if defendant had a "reasonable expection of privacy" therein. *Katz v. U. S.,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967); and *see* 1 La Fave, Search and Seizure § 2.2 p. 242-43 (1978). Optical surveillance does not constitute an illegal search where defendant did not have a reasonable expectation of privacy in the place searched. *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* (1980). Defendant may be said to have a "reasonable expection of privacy" if he has an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *Katz v. U.S., supra,* 389 US at 361 (concurring opinion, Harlan, J.); *see also State v. Davis,* 51 Or App 827, 627 P2d 492 (1981); *State v. Harp, supra.*

The first prong of the *Katz* test requires us to determine whether defendant exhibited an intention to protect his privacy. In analyzing defendant's expectation, we find persuasive the analysis in *U. S. v. Taborda,* 635 F2d 131 (2d Cir 1980). There, government agents used a high-powered telescope, without issuance of a warrant, to observe defendant processing cocaine in his apartment. In applying the *Katz* test, the court concluded that where defendant does not knowingly expose his activities to *unenhanced* viewing, he cannot be said to have renounced his expectation of privacy simply because the government, through sophisticated search techniques, is able to peer into his residence. The Fourth Amendment is designed to protect the citizenry from just such intrusive governmental surveillance:

> "The vice of telescope viewing into the interior of a home is that it risks observation not only of what the householder should realize might be seen by unenhanced viewing, but also of intimate details of a person's private life which he legitimately expects will not be observed

either by naked eye or enhanced vision * * *." 635 F 2d at 138-39 (Footnotes omitted).

■ We think defendant manifested an expectation of privacy here. He placed the plant in a second story room in his house. A large tree obscured the window, and the plant was not visible to an outside observer off the premises with the naked eye.

Further, we believe defendant's expectation of privacy was "reasonable." The telescopic view was of an object inside defendant's residence. Although the *Katz* court stated that the "Fourth Amendment protects people not places," it is still useful, as La Fave, has observed, to view residential premises as a place especially protected against unreasonable police intrusion. 1 La Fave, Search and Seizure, § 2, 3, p. 298 (1978). In *Katz*, Justice Harlan stated "A man's home is for most purposes a place where he expects privacy," 389 U. S. at 361. Society recognizes that expectation as reasonable.

The state argues that because defendant did not close the curtain to the window, he thereby forfeited his expectation of privacy. This approach, adopted by the Pennsylvania and Illinois courts, is based on the premise that a person who, by not closing the curtains, shows little regard for his privacy and does not have a justifiable or reasonable expectation of privacy. *Commonwealth v. Hernley,* 216 Pa Super 177, 263 A2d 904, 48 ALR 3d 1172 (1970), *cert denied* 401 US 914 (1971); *see also, Commonwealth v. Williams,* 262 Pa Super 508, 396 A2d 1286 (1978); *People v. Hicks,* 49 Ill App 3d 421, 7 Ill Dec 279, 364 NE2d 440 (1977). If, by not closing his curtains, defendant thereby exposes his property to public view by the naked eye, we would find his failure to do so relevant. However, where, as here, only an enhanced eye could penetrate, we do not think defendant's failure to draw the curtain should be interpreted as a renunciation of his expectation of privacy. *See U. S. v. Taborda, supra,* 635 F 2d at 139; *U.S. v. Kim,* 415 F Supp 1252 (D Hawaii 1976); *People v. Arno,* 90 Cal App 3d 505, 153 Cal Rptr 624 (1979); *see also,* LaFave, *supra,* § 2.2, 260-61.

In sum, we reach the same conclusion as the United States Court of Appeals reached in *Taborda:*

"* * * [O]bservation of objects and activities inside a person's home by unenhanced vision from a location where the observer may properly be does not impair a legitimate expectation of privacy. However, any enhanced viewing of the interior of a home does impair legitimate expectation of privacy and encounters the Fourth Amendment's warrant requirement unless circumstances create a traditional exception to that requirement." 635 F2d at 139.

Affirmed.