Argued and submitted April 5, decision of the Court of Appeals and judgment of the trial court affirmed September 30, 1988

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# MARK J. SLOWIKOWSKI,
*Petitioner on Review.*

## (TC 85-3779-C-2; CA A39836; SC S34625)

761 P2d 1315

Carl Caplan, Medford, argued the cause and filed the petition on behalf of petitioner on review.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause on behalf of respondent on review. With her on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J

Defendant was charged with possession of a controlled substance after sheriff's deputies discovered approximately 20 pounds of marijuana in a storage locker that he had rented and padlocked. The marijuana initially was discovered by "Breaker," a police dog trained to detect and signal the presence of marijuana. Defendant filed a motion to suppress the marijuana on the ground that Breaker's olfactory inspection of his locker without a warrant was an illegal search under the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution.[1] The trial court denied the motion and, after a stipulated facts trial, defendant was convicted. The Court of Appeals affirmed. *State v. Slowikowski,* 87 Or App 677, 743 P2d 1126 (1987) (*in banc*). We also affirm.

Defendant's locker was located in a "mini-storage" facility containing approximately 221 lockers. Deputy Fillmore of the Jackson County Sheriff's Office Canine Unit testified that he requested and received permission from the owners of the facility to use the facility for "training and searching" purposes. To prepare for the training exercise, Fillmore placed a bag of marijuana in an unused locker in the facility. When Breaker was released to find the marijuana planted by Fillmore, he unexpectedly "alerted," or signalled the presence of marijuana, at defendant's locker. Fillmore contacted Deputy Kennedy, a narcotics investigator, who went to the facility. The officers walked Breaker through the facility, and the dog again alerted at defendant's locker. Kennedy then got down on his hands and knees and sniffed at the door of defendant's locker. He detected a distinct odor of marijuana. The following day, he obtained a warrant to search the locker. The ensuing search disclosed the marijuana in this case.

The arguments of the parties closely parallel the various lines of analysis followed by members of the Court of Appeals. We therefore set out those lines of analysis at some length. The Court of Appeals majority held that the dog sniff

---

[1] Defendant also argued below that Breaker's inspection was a warrantless search prohibited by the Fourteenth Amendment to the United States Constitution. He does not pursue that claim in his petition for review.

that discovered defendant's marijuana was not a search under either the state or the federal constitution. The majority noted that the sniff did not intrude into the locker itself but merely detected odors emanating into the common area. The odors emanating from the locker, in the majority's view, "announced" the locker's contents so that Breaker's perception of those odors did not constitute a search. *Cf. State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986) ("No warrant is required for the opening and seizure of the contents of transparent containers or containers that otherwise announce their contents"). The majority further concluded that a dog's superior sense of smell is not a "technological enhancement" of the human senses. 87 Or App at 683-85.

Buttler, J., specially concurring, argued that, on the facts of this case, it was unnecessary to decide whether the use of a trained dog to detect narcotics is a search "under any and all circumstances," noting that:

> "In this case, the officers were not out on a fishing expedition to seek out marijuana; the trial court found that they were engaged in a training exercise with 'Breaker' at the ministorage facility where they had the owner's permission. While engaged in the training exercise, 'Breaker' unexpectedly alerted to defendant's storage unit, thereby indicating that it contained contraband. Under those limited and unusual circumstances, I would accept the 'plain smell' doctrine, because: (1) the officers were where they had a right to be and were not engaged in a general search or fishing expedition, and the discovery of the scent was inadvertent; and (2) it was accomplished without the use of any *technological* enhancement. Because dogs with more sensitive olfactory nerves have been used in police work for centuries, I do not consider their use in this instance as a technological enhancement."

87 Or App at 686-87 (Buttler, J., specially concurring).

Young, J., joined by Joseph, C. J., and Newman, J., dissented. The dissenters would have held that the dog sniff was a search of the contents of defendant's locker and that, in the absence of reasonable suspicion to believe that contraband would be found there, the search was illegal. The dissent argued that, although the dog sniff did not physically invade the locker, it nevertheless violated defendant's privacy interest:

> "If something that is 'plain' to a dog or to a machine, but

not to a human, is not private, there can be few protected privacy interests. Although a transparent container may announce its contents to a human observer so that there is no privacy interest in them, *see State v. Owens, supra,* 302 Or at 206, a container whose contents are unknown until some non-human instrument is brought to bear has announced nothing. Its contents are not in plain view, plain smell or plain feel. If the plain view/smell doctrines mean anything when applied to a closed container, it must be that a person using only unenhanced human senses must be able to discover the contents of the container without actually intruding into it. Breaker's nose was an *enhancement* of normal human senses, and it invaded defendant's protected privacy interest in the storage locker."

87 Or App at 688-89 (Young, J., dissenting) (footnote omitted). The dissenting opinion also notes that:

"Of course, if the officers had smelled the marijuana themselves, their perceptions, not Breaker's would have justified the warrant. However, that is not what happened. Although Deputy Kennedy did eventually smell the marijuana, Breaker directed him to it. Breaker did not simply allow Kennedy to observe better something that he had already discerned, as a flashlight or binoculars might. * * * Rather, Breaker pointed him in a direction that he would not otherwise have gone. Accordingly, the information which supported the issuance of the search warrant was based on a previous search which violated defendant's privacy rights under Article I, section 9. The taint of that previous search invalidates the later warrants."

*Id.* at 693.

At the outset, we must determine whether the officers were legitimately on the premises when the marijuana was detected. In his petition for review, defendant argues that the Court of Appeals majority and specially concurring opinions erred in characterizing the deputies' actions as a training exercise. We understand defendant's argument to be that the officers' real intention was to search for contraband, not to train Breaker, and that such a search would exceed the scope of the consent given by the owners of the facility. *See State v. Tanner,* 304 Or 312, 745 P2d 757 (1987) (holding that, when a person entrusts effects to another, and the police discover those effects in the other's home by means of a search that

violates Article I, section 9, the search also violates the entrustor's rights under Article I, section 9).

The trial court below made no express finding whether the officers were authorized to conduct a search in addition to a training exercise, or whether they actually were conducting a search when the marijuana was detected. However, the trial court found that the officers had a right to be where they were when they discovered the marijuana in defendant's locker, because they had the owner's permission to be at the storage facility. Implicitly, therefore, the trial court must have found that the officers were acting within the scope of that consent. Although not a model of clarity or explicitness, the court's findings were adequate.

We next consider whether the officers' discovery of the odor of marijuana from defendant's locker was the result of a search. In *State v. Owens, supra,* 302 Or at 206, this court held:

"Article I, section 9, protects privacy and possessory interests. A 'search' occurs when a person's privacy interests are invaded. When the police lawfully seize a container, they can thoroughly examine the container's exterior without violating any privacy interest of the owner or the person from whom the container was seized. For example, the police can observe, feel, smell, shake and weigh it. Furthermore, not all containers found by the police merit the same protection under Article I, section 9. Some containers, those that by their very nature announce their contents (such as by touch or smell) do not support a cognizable privacy interest under Article I, section 9. Transparent containers (such as clear plastic baggies or pill bottles) announce their contents. The contents of transparent containers are visible virtually to the same extent as if the contents had been discovered in 'plain view,' outside the confines of any container. Applying the doctrine of 'plain view' to transparent containers, we hold that no cognizable privacy interest inheres in their contents, and thus that transparent containers can be opened and their contents seized. No warrant is required for the opening and seizure of the contents of transparent containers or containers that otherwise announce their contents. Under the Oregon Constitution, a lawful seizure of a transparent container is a lawful seizure of its contents."

Defendant's locker "announced its contents" in much the same manner as did the transparent container in

*Owens.* The odor emanating from defendant's storage locker was readily detectable by Deputy Kennedy. Had the initial discovery of the odor emanating from defendant's locker been made by the deputies themselves, the discovery would not have been a "search." The only question is whether it is constitutionally relevant that the deputies smelled the odor only after Breaker directed their attention to it.

Defendant relies primarily on language from this court's opinion in *State v. Louis,* 296 Or 57, 672 P2d 708 (1983). In that case, the police, responding to a complaint that the defendant had been exposing himself in his living room window, set up a camera, equipped with a telephoto lens, in a neighbor's garage across the street from the defendant's residence. Without obtaining a warrant, the police photographed the defendant in his living room window, approximately 100 to 120 feet away. The photographs were developed and enlarged, and showed the defendant exposing himself. This court held that the telephoto photographing of the defendant was not a search, because the camera merely recorded what could be seen from the garage without the aid of a telephoto lens. *Id.* at 60. We noted, however, that:

> "[s]uch a case may not be made out * * * if objects or conduct in protected premises can be seen or overheard only by technologically enhanced efforts. A determined official effort to see or hear what is not plain to a less determined observer may become an official 'search.' The photographs used as evidence in this case did not represent such an effort; they merely recorded what could be seen and had been seen without the camera. A 135 mm lens does not shed light into darkness and provides only modest enlargement, not more than three times normal vision. *Cf., State v. Blacker,* 52 Or App 1077, 630 P2d 413 (1981) (use of telescopic scrutiny of objects within home that were not otherwise visible from the outside held unlawful search). Even a modest telescopic enlargement, like an electronic amplification of sounds, might be a 'search' for something not otherwise clearly discernible; but that is not this case."

*Id.* at 61.

Defendant argues that, even though the odor of marijuana was detectable by the human nose, the use of Breaker's superior sense of smell represented a "determined official effort" to smell what otherwise would not be apparent. He

further argues that the dog's sense of smell is the equivalent of "technologically enhanced" efforts to discover what would not be discernable to the human senses and, therefore, is a search.

A case more to the point of defendant's argument is *State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988), decided after oral argument in the present case. In *Campbell,* this court held that the use of a radio transmitter to monitor the movements of a private automobile to which the police had attached the transmitter is a search requiring a warrant under Article I, section 9, of the Oregon Constitution. The state had argued that no search was involved, because the defendant had no "reasonable expectation of privacy" in the movements of an automobile that is open to public view. This court expressly rejected the term, "reasonable expectation of privacy," to describe the interest protected under Article I, section 9. The court also rejected the legal premise underlying the state's argument, *viz.,* "that information legitimately available through one means may be obtained through any other means without engaging in a search." *Id.* at 166. We explained:

> "* * * Whether police conduct is a search does not turn on whether its object could be discovered by conduct that is not a search. For example, in *State v. Louis, supra,* the defendant exposed himself to public view through his living room window. This court held that police officers did not engage in a search by photographing him from a house across the street with a 135 mm camera lens, which provided only minimal enhancement of what could be observed with the unaided eye. Nonetheless, if an undercover police officer is invited into a home and observes illegal conduct, the officer has not committed a search, but an unconsented entry into the home by other police officers to observe what the undercover officer could or did observe would be a search. The issue is not whether what the police learned by using the transmitter in this case was 'exposed to public view,' but whether using the transmitter is an action that can be characterized as a search."

*Id.* at 166-67.

Reasoning by analogy from *Campbell* and *Louis,* it also may be true that the purposive use of Breaker's superior olfactory powers to discover what defendant had concealed — had the trial court found that this was what actually was going on — would be a search. On the other hand, it may be that,

inasmuch as dogs have been used for purposes analogous to the one for which Breaker was utilized since long before the advent of either the state or federal constitutions, there is an historical exception for such use of dogs, *i.e.,* such a use would not be a search.[2] The question is interesting, but we need not answer it here.

■     As previously explained, we understand the trial court to have accepted the officer's testimony that he took Breaker to the storage for a legitimate purpose, *viz.,* training, and was admitted to the premises for that purpose. Thus, the officer (and Breaker) were in a place where they had a right to be when Breaker unexpectedly alerted to defendant's locker. Breaker's discovery was not the result of a purposive intrusion into defendant's privacy — the officer hoped and expected that Breaker would find marijuana in another locker, not in defendant's. There being no purposive intrusion into a protected area, there was no search by Breaker.

■ ■     Once the officer's attention was directed to defendant's locker, the only other significant event was Kennedy's close sniffing inspection of that part of the common area immediately outside the defendant's locker. While this action certainly was purposive, not every purposive action by a police officer is a "search," at least in the constitutional sense. Kennedy was directed to where he was by a non-search — Breaker's "alert" to the locker. He did not himself go into the locker. The odors he detected were all entirely outside the locker, where anyone who tried could have detected them. As such, they were like the rays of light reflected from the offender and observed from outside his house in *State v. Louis, supra.* The subsequent search pursuant to a warrant based on Kennedy's observations was proper.

The decision of the Court of Appeals and the judgment of the trial court are affirmed.

---

[2] For a wonderful dissertation on the place of bloodhounds in law enforcement, including a paeon of praise for a legendary canine known as "Old Boston," see the entertaining opinion of Barefoot, J., in *Buck v. State,* 77 Okl Cr 17, 138 P2d 115 (1943). Bloodhounds have played significant roles in history and literature. *See, e.g.,* Sir Walter Scott, *The Talisman.*

**LENT, J.,** dissenting.

Because this court's majority affirms the decision of the Court of Appeals in *State v. Slowikowski,* 87 Or App 677, 743 P2d 1126 (1987), I think it is important at the very outset to observe that this court's majority does not affirm the basis of the decision of the Court of Appeals. That court stated:

> "The dispositive issue is whether a dog-sniff is a search. On these specific facts, we conclude that a dog-sniff is not a search. Therefore, we affirm."

87 Or App at 679. Later the court explained why it deemed the "specific facts" to be important:

> "On these specific facts, we hold that, because defendant had *no reasonable expectation of privacy* in the odor of marijuana escaping from his unit, the dog sniff here was not a search." (Emphasis added.)

87 Or App at 685.

As the majority of this court notes (307 Or at 26), since the time of the Court of Appeals decision in this case, this court has rejected the term "reasonable expectation of privacy" to describe the interest protected under Article I, section 9, of the Oregon Constitution. We did so unanimously in *State v. Campbell,* 306 Or 157, 164, 759 P2d 1040 (1988).[1]

I would also here note the extreme narrowness of the majority opinion in this court. Essential to that opinion is the majority's assumption that the trial court found as historical fact that Breaker was on a training mission and that his alerting to defendant's locker was just a fortuitous event. In other words, the majority does not purport to allow the police to take a trained dog out to cast about for contraband as does a bird dog in the fields for game. The majority makes this clear (307 Or at 23) by stating that "we must determine" whether the officers were legitimately on the premises and then determining that they were by accepting the trial court's implied finding that this was a training exercise.

---

[1] The Court of Appeals also relied on its decision in *State v. Bridewell,* 87 Or App 316, 742 P2d 648 (1987), for the proposition that there was no search in the case at bar. Since the time of the opinion of the Court of Appeals in the instant case, we have reversed the decision in *Bridewell. State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988).

The majority later states:

"[I]t may be that, inasmuch as dogs have been used for purposes analogous to the one for which Breaker was utilized since long before the advent of either the state or federal constitutions, there is an historical exception for such use of dogs, *i.e.,* such a use would not be a search."

307 Or at 26. I would observe that there were many practices indulged in by government long prior to the advent of either state or federal constitutions. Until overthrown in the Revolutionary War, the British government long made use of the practice of breaking into commercial buildings to uncover uncustomed goods. After the successful revolution, the states and federal governments adopted constitutions to prevent that very activity. Because those practices were not named specifically in the search and seizure provisions of the various constitutions, are we to assume that they were not searches because of the history of their use?

At 307 Or 22-23, the majority quotes at some length from the dissenting opinion in the Court of Appeals that was authored by Judge Young and joined by Chief Judge Joseph and Judge Newman. I am essentially in agreement with the reasoning of that opinion.

The majority acknowledges what this court said so recently in *State v. Louis,* 296 Or 57, 61, 672 P2d 708 (1983), about technological enhancement of the efforts to discover what is within a container. I disagree with the majority that the locker in this case " 'announced its contents' in much the same manner as did the transparent container in *Owens.*" If it "announced" marijuana, it was to Breaker, not to the deputy. The dog sniff in this case was as much a sensory-enhanced observation of the interior of a "protected premise" as the observation in *Louis* would have been had a higher power camera lens been employed. That the police have trained a dog, rather than designed or used a machine, to make these observations should be of no constitutional moment. This case should be a relatively straightforward application of the idea expressed in *Louis.*

I dissent.

Linde and Campbell, JJ., join in this dissent.