**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**James A. WIESER, Defendant–Appellee.**

**No. 90SA58.**

Supreme Court of Colorado, En Banc.

Sept. 24, 1990.

James C. Sell, Chief Deputy Dist. Atty., Robert R. Gallagher, Jr., Dist. Atty., Philip M. Smith, Deputy Dist. Atty., Englewood, for plaintiff-appellant.

Arthur M. Schwartz, P.C., Michael W. Gross, Denver, for defendant-appellee.

Justice VOLLACK announced the Judgment of the Court.

The People brought this interlocutory appeal pursuant to C.A.R. 4.1, 7B C.R.S.

(1984),[1] to challenge the order of the Arapahoe County District Court suppressing evidence obtained from a search of a storage locker rented by defendant James Wieser. We reverse.

## I.

Events leading to the defendant's arrest were set in motion when the Drug Enforcement Administration (DEA), and Officer Daniel Johnson of the Englewood Police Department, began an investigation of Richard Marsh, a suspected methamphetamine dealer. At the time of the suppression hearing, Officer Johnson had been a police officer for five years and for fourteen months had been assigned to the South Metro Task Force, a multijurisdictional task force which investigates drug crimes.

The DEA began investigating Marsh in March of 1989. During its investigation the DEA purchased several pounds of methamphetamine from Marsh and intercepted a one-pound package of methamphetamine containing Marsh's fingerprints. The DEA subsequently informed Officer Johnson that Marsh would be flying from Arizona to Denver, and that from Denver he would be shipping drugs to buyers in other cities. DEA agents and Officer Johnson decided to keep Marsh under surveillance during his visit to Denver.

Marsh arrived at Stapleton Airport and drove a pickup truck to James Wieser's (the defendant's) apartment. Marsh and the defendant drove to an apartment at 3443 South Canosa Court, and then drove to a drug paraphernalia store. Later they met a woman at a restaurant, and drove with her to a hotel. The group checked into the hotel and stayed there for about an hour and a half. The defendant then left the hotel and drove back to his apartment. The next morning, Marsh met the defendant at his apartment. Later in the day Marsh returned to the airport and flew back to Arizona.

Approximately one or two weeks later the DEA notified Officer Johnson that Marsh would again be flying into Denver to deal drugs. Officer Johnson again kept Marsh under surveillance during his stay in Denver. When he arrived in Denver, Marsh met the defendant at the airport, and the two rented a car and drove to several houses and apartments in the Denver metropolitan area. Marsh remained in Denver for three days, and on each day he contacted the defendant.

Sometime after Marsh left Denver, Officer Johnson was contacted by the owner of a public storage facility in which Officer Johnson rented a storage locker. The owner of the public storage facility was acquainted with Officer Johnson and had previously cooperated with him in a drug investigation involving the public storage facility. The owner reported that one of the co-lessees of a storage locker in the facility was engaging in suspicious behavior. The owner identified the co-lessee as James Wieser. The owner explained that the defendant had visited his locker on each of the previous five or six days. On each visit the defendant rode a motorcycle and carried only a backpack. The owner of the storage facility observed the defendant on three different motorcycles, but each carried the same California license plate. Each of the defendant's visits to his locker lasted approximately five minutes. Officer Johnson concluded from the defendant's behavior that he was storing something in the locker that could be carried in a backpack. The records at the public storage facility identified 3443 South Canosa Court as the address of the other co-lessee of the storage locker. Officer Johnson recognized 3443 South Canosa Court as one of the addresses Marsh and the defendant had visited on Marsh's first trip to Denver.

**1.** C.A.R. 4.1(a) authorizes the state to file an interlocutory appeal in this court from a ruling of a district court granting a motion under Crim.P. 41(e) and (g) and Crim.P. 41.1(i), made in advance of trial by the defendant for return of property and to suppress evidence, or granting a motion to suppress an extra-judicial confession or admission. The People have properly certified to the district court, and to this court, that this appeal has not been taken for purposes of delay, and that the evidence is a substantial part of the proof of the charges pending against the defendant. C.A.R. 4.1(a); *People v. Mendoza–Rodriguez*, 790 P.2d 810, 813 (Colo.1990).

Based on the defendant's activities, and the defendant's association with Marsh, Officer Johnson suspected that the defendant was storing drugs or money in the locker.

Officer Johnson arranged to have a drug-sniffing dog assist in the investigation. Officer Johnson twice walked the dog past several lockers in the public storage facility, including the defendant's, and on each pass the dog alerted to the defendant's locker. Officer Johnson testified that the dog's behavior indicated that narcotics were present in the locker.

Officer Johnson applied for a warrant to search the defendant's locker for methamphetamine, chemicals used in the production of methamphetamine, or derivatives of methamphetamine, as defined in sections 12–22–309 through 12–22–313, 5 C.R.S. (1985 & 1989 Supp.). The Arapahoe County District Court issued the search warrant on July 18, 1989, and on that date Officer Johnson searched the defendant's locker. Officer Johnson discovered marijuana concentrate and psyilocyn, a hallucinogenic substance, in the locker.

The People charged the defendant in Arapahoe County District Court with one count of knowing possession of psyilocyn,[2] and one count of knowing possession and manufacture of marijuana concentrate,[3] in violation of subsections 18–18–105(1)(a) and (2)(a)(I), 8B C.R.S. (1986 & 1989 Supp.). The defendant filed a motion to suppress evidence obtained as a result of the execution of the search warrant. After holding a hearing the district court granted the motion to suppress.

## II.

■ The United States and Colorado Constitutions protect individuals from unreasonable searches and seizures.[4] "When a defendant challenges governmental in-

vestigative activity involving an intrusion into his privacy, *Katz* [*v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),] requires a two-step inquiry: (1) was the intrusion a search; (2) if so, was it a reasonable search." *People v. Unruh*, 713 P.2d 370, 377 (Colo.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986).

The United States and Colorado constitutions "protect[ ] people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983); *accord United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *People v. Oates,* 698 P.2d 811, 814 (Colo. 1985); *People v. Sporleder*, 666 P.2d 135, 139 (Colo.1983). Whether the activities of the drug-sniffing dog in this case constituted a search depends on whether the dog's actions intruded upon an activity or area in which the defendant held a legitimate expectation of privacy. *Oates*, 698 P.2d at 814; *see also United States v. Colyer*, 878 F.2d 469, 473 (D.C.Cir.1989) ("[t]he question always to be asked is whether the use of a trained dog intrudes upon a legitimate expectation of privacy"). A legitimate expectation of privacy is one that society is prepared to consider reasonable. *United States v. Jacobsen*, 466 U.S. 109, 122, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984); *Oates*, 698 P.2d at 814; *Sporleder*, 666 P.2d at 140. "The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in each particular case." *Hoffman v. People*, 780 P.2d 471, 474 (Colo.1989); *accord People v. Shorty*, 731 P.2d 679, 681 (Colo.1987).

In *Place*, 462 U.S. at 707, 103 S.Ct. at 2644, the Supreme Court considered whether a canine sniff of airport luggage constituted a search under the fourth amend-

---

2. Psyilocyn is defined as a schedule I controlled substance by § 12–22–309(2)(a)(XVI), 5 C.R.S. (1989 Supp.).

3. The complaint alleges that marijuana concentrate is defined as a schedule IV controlled substance by § 12–22–312, 5 C.R.S. (1989 Supp.).

4. The fourth amendment provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." Article II, § 7, of the Colorado Constitution provides: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."

ment. The Court relied upon the following reasoning to conclude that such a procedure did not constitute a search:

We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* (citations omitted).

Courts addressing the question of whether a dog sniff constitutes a search have focused on the unique nature of dog sniffs, as well as the defendant's expectation of privacy in the area subjected to the dog sniff. *See United States v. Dovali–Avila,* 895 F.2d 206, 207–08 (5th Cir.1990) ("the mere alerting of a dog, or, to an even lesser extent, the mere walking of a dog around a particular vehicle, does not, in and of itself, constitute a search"); *Colyer,* 878 F.2d at 475 (dog sniff conducted in corridor outside of defendant's room aboard passenger train did not constitute a search); *United States v. Stone,* 866 F.2d 359, 363 (10th Cir.1989) (police use of a narcotics dog to sniff an automobile which they have stopped upon reasonable suspicion does not constitute a search); *United States v. Whitehead,* 849 F.2d 849, 856 (4th Cir.) (entry by officers into defendant's compartment on a passenger train to conduct a dog sniff was reasonable without a showing of probable cause), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988). In *State v. Slowikowski,* 307 Or. 19, 27, 761 P.2d 1315, 1320 (1988), the Oregon Supreme Court held that a drug-sniffing dog's discovery of marijuana in the defendant's locked storage locker was not a search. The court based its decision on the fact that the dog's discovery of the marijuana was accidental, and the fact that at the time of the discovery the officers and the dog were in a place they had a right to be. *Id.*

We hold that the dog sniff conducted outside of the defendant's storage locker was not a search under either the United States Constitution or the Colorado Constitution. As the Court noted in *Place,* 462 U.S. at 707, 103 S.Ct. at 2644, a dog sniff does not expose noncontraband items that otherwise would remain hidden from public view. The only information the sniff discloses to law enforcement authorities is whether narcotics are present in the area sniffed. *Id.; see also Jacobsen,* 466 U.S. at 123, 104 S.Ct. at 1661 ("[a] chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy"). Our conclusion that the canine sniff of the storage locker did not constitute a search is supported by the manner in which Officer Johnson conducted the search. Officer Johnson walked the dog past the defendant's locker and several other lockers. *Cf. Slowikowski,* 307 Or. at 27, 761 P.2d at 1320. At all times the dog remained in a public walkway outside of the defendant's

locker. *Cf. Colyer*, 878 F.2d at 474 (sniff of train compartment conducted from a public corridor); *Hoffman*, 780 P.2d at 474 (officers' observation from public alley of marijuana plants in defendant's backyard did not constitute a search); *Slowikowski*, 307 Or. at 27, 761 P.2d at 1320. Under these circumstances the dog sniff conducted by Officer Johnson was not a search under either the United States Constitution or the Colorado Constitution, and therefore the district court erred in holding that the sniff violated the defendant's constitutional rights. *Whitehead*, 849 F.2d at 856–57 (officer's entry into defendant's passenger train compartment to conduct a dog sniff of defendant's luggage did not constitute a search); *see also Colyer*, 878 F.2d at 477 (the fourth amendment is not implicated where no search occurs).

The defendant relies upon *People v. Unruh*, 713 P.2d 370. In *Unruh*, the police were investigating a recent burglary of the defendant's house. One of the investigating officers noticed three individuals attempting to conceal an object in the trunk of a car. *Id.* at 372. By the time the officer approached the car to investigate, the individuals had abandoned the car. The officer discovered that the object in the car trunk was a locked safe. *Id.* When one of the individuals was subsequently apprehended, he confessed to participating in a recent burglary in the vicinity of the defendant's house, and he told the officer that he thought the safe contained money and drugs. *Id.* During an exigent search of the defendant's house another officer discovered a triple-beam scale, a mirror, two teaspoons, and a playing card in a closet in the defendant's basement where the safe had been located. The implements discovered by the officer were all stained with a white residue. *Id.* On the basis of these discoveries the police took the safe to the police station and submitted it to a canine sniff. *Id.* at 373. We held that the dog sniff was a search because the defendant could have no expectation that the locked safe, which had been taken from his house and subsequently recovered by the police, would be subject to a governmental investigative technique of any sort. *Id.* at

378. We then held, based on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that the dog sniff was justified because the officers possessed a reasonable suspicion that the safe contained drugs. *Unruh*, 713 P.2d at 379; *see also Place*, 462 U.S. at 722, 103 S.Ct. at 2652 (Blackmun, J., concurring). Thus we affirmed the defendant's conviction. *Id.* at 382. *Unruh* is not dispositive here because the dog sniff in this case, which took place in a public right of way next to a public storage locker, was not a search. Unlike the safe in *Unruh*, the public right of way outside the defendant's public storage locker was not protected by a reasonable expectation of privacy. *Cf. Place*, 462 U.S. at 707, 103 S.Ct. at 26; *Slowikowski*, 307 Or. at 27, 761 P.2d at 1320.

The order of the district court is reversed, and the case is remanded for further proceedings.

ROVIRA, C.J., joins.

ERICKSON, J., specially concurs.

MULLARKEY, J., concurs in the judgment, and LOHR and KIRSHBAUM, JJ., join.

QUINN, J., dissents, and LOHR, J., joins the dissent in part.

Justice ERICKSON specially concurring:

The issue to be resolved is whether the dog sniff of a public storage locker constitutes a search that violates the fourth amendment of the United States Constitution or Article II, section 7 of the Colorado Constitution. The focus on the right to privacy need not extend to the total factual scenario addressed by the majority. In *People v. Unruh*, 713 P.2d 370 (Colo.1986), we addressed a bizarre set of facts and by a divided vote upheld the search of a safe that was made after a warrant was obtained following a positive dog sniff of the safe. I joined Justice Rovira in his special concurrence in *Unruh* because the dog sniff did not, in my opinion, constitute a search under the facts in that case that would trigger application of either the

United States or Colorado constitutional principles relating to search and seizure.

The United States Supreme Court squarely addressed the issue in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1986). In *Place*, the Court found that despite the defendant's reasonable expectation of privacy in luggage he checked with an airline, a dog sniff of that luggage at a public airport was not a search. *Id.* at 707, 103 S.Ct. at 2644. The Court stated:

> We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage.
>
> . . . .
>
> Therefore, we conclude that ... exposure of respondent's luggage, which was located in a public place, to a trained canine [ ] did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* (citations removed). The lesson from *Place* is clear: a dog sniff is not a search. The only fourth amendment question is whether the police had the right to be where they were when a dog was used to identify narcotics. If the police bring a dog into a suspect's home without a warrant, it is not the dog sniff that is at issue, but the violation of the defendant's right to privacy by the illegal entry.

The majority's analysis of the facts leading up to the dog sniff is unnecessary in this case.[1] The sole question is whether the defendant had a legitimate expectation of privacy in the storage locker that would vitiate the search warrant that was based upon the dog sniff. Since the dog sniff was not a search, the only issue is whether the defendant had a legitimate expectation of privacy in the public locker that would

prevent the use of a dog to determine whether narcotics were in the locker. In short, did the police have the right to be outside the locker when they used the dog to identify narcotics within the locker? The dog sniffed a locker rented by the defendant in a public storage facility. The locker was adjacent to a roadway that was accessible to all persons visiting the lockers. The owner of the facility contacted Officer Johnson to report suspicious behavior. The police officer himself had a locker at the facility which gave him the same right to use the roadway that was afforded to others who rented lockers. Johnson testified that the dog merely sniffed the air outside the locker. Under the facts of this case, the police had the right to be outside of the locker and did not violate the defendant's right of privacy by having a trained dog smell the odors emanating from the locker. Accordingly, I concur that the trial court erred in finding that the defendant's right of privacy was violated.

Justice MULLARKEY concurring in the judgment:

The framework for analyzing this case was developed in *People v. Unruh*, 713 P.2d 370 (Colo.1986). In *Unruh*, we recognized that a dog sniff could be a search if "it was an intrusion into something that the individual reasonably expected to be private." *Id.* at 377. Because a dog sniff is a minimally intrusive search, however, we held that a showing of reasonable suspicion rather than probable cause was required prior to a warrantless search by dog sniff. *Id.* at 379. In adopting the "reasonable suspicion" test, we followed Justice Blackmun's concurrence in *United States v. Place*, 462 U.S. 696, 723, 103 S.Ct. 2637, 2653, 77 L.Ed.2d 110 (1983) (Blackmun, J., concurring in judgment). *Unruh* is consistent with other decisions applying the "reasonable suspicion" test to a search done by a dog sniff. *See, e.g., United States v. Colyer*, 878 F.2d 469, 479 (D.C. Cir.1989) (alternate holding); *United States v. Whitehead*, 849 F.2d 849, 858 (4th

---

1. No issue exists regarding probable cause or the totality of the circumstances as set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Cir.1988); *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 479 (*per curiam*) (5th Cir.1982).

■ Applying *Unruh* to the facts of the case now before us, I would conclude that the defendant had a reasonable expectation of privacy in the storage locker, but that the police had a reasonable suspicion justifying a warrantless dog sniff search of the locker. The configuration of the storage locker facility is not entirely clear from the record, however it does not seem that the passageway can be characterized as a public place. The storage facility was surrounded by a fence and access to the storage lockers was limited by the facility owner. In order to gain entry, visitors were required to pass through the gate, enter the office, and sign in on a log sheet. The defendant's locker was garage-sized with an overhead sliding door of approximately ten feet by twelve feet. The locker space was secured with a padlock to which the defendant had the only key. The owner did not retain a key to the locker. Under the facts, the defendant had a reasonable expectation of privacy.

I also would hold that the police had reasonable suspicion prior to conducting the dog sniff of the defendant's storage locker. In *Unruh*, we held that the dog sniff was a minimally intrusive search justifiable on reasonable suspicion based on the principles from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In order to conduct a warrantless sniff search, then, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. "Reasonable suspicion" must be given a practical, common sense construction. As this court has recognized, officers are not required to weigh precisely their observations since they do not carry out their duties in an analytical vacuum. *People v. Casias*, 563 P.2d 926, 932 (Colo.1977).

Justice Vollack's opinion recounts extensive surveillance done by the police in which the defendant was in constant contact with a person identified by the federal Drug Enforcement Administration as a known drug dealer. Whenever that person visited Denver, the two men were always observed together. They visited numerous apartments and houses in the metropolitan area, stopped at a "head shop" and briefly visited the home of the co-lessee of the defendant's storage locker. In addition, the police had received an independent citizen tip from the owner of the storage locker facility. She told the police that a person, later identified as the defendant, had visited his locker daily for the past five or six days carrying only a back pack and staying for periods of approximately five minutes. He drove three different motorcycles on his visits, but used the same plates which were registered in California under the defendant's name. The defendant signed in at the office by name, and the physical description given by the owner matched that of the defendant. Based on his prior surveillance of the defendant's activities with the drug dealer, the defendant's conduct with respect to the locker, and the fact that the co-lessee of the locker lived at one of the addresses visited by the drug dealer and the defendant, the officer drew the inference that drugs or money were being stored at the locker. In my view, the dog sniff was supported by a reasonable suspicion that illegal drugs were kept in the storage locker.

Accordingly, the "reasonable suspicion" test is met and I concur in the reversal of the trial court's suppression order.

LOHR and KIRSHBAUM, JJ., join in this concurrence.

Justice QUINN dissenting:

The trial court based its suppression ruling on article II, section 7 of the Colorado Constitution, which provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures," and ruled that a dog sniff directed at the closed door of the defendant's locker constituted a search under the Colorado Constitution and that the search was not supported by reasonable suspicion. In announcing the judgment, Justice Vollack's opinion, which

Chief Justice Rovira joins and in which Justice Erickson specially concurs, concludes that the dog sniff in question did not constitute a search and never reaches the issue of reasonable suspicion. I disagree with that conclusion because I believe that the Colorado Constitution contemplates a greater privacy expectation in a padlocked storage locker than Justice Vollack's opinion is willing to concede.

## I.

The facts of this case are critical to a proper resolution of not only whether there was a search but also whether there was reasonable suspicion for any such search. The evidence at the suppression hearing established that the defendant rented a garage-sized storage locker from Park'n Store Self Storage Company. The storage company is surrounded by a fence, and the only entrance to the lockers is through a gate. Lessees are admitted through the gate after signing an entry record in the storage company's office. The defendant's locker was padlocked, and only he retained the key.

On July 18, 1989, Agent Johnson, an Englewood police officer, received a call from the owner of the storage company who told him that a lessee of one of the storage lockers was acting suspiciously by visiting the locker daily for short periods of time on a motorcycle and carrying only a backpack. When Agent Johnson arrived at the storage company, the owner told him that the lessee in question was James Wieser. Johnson remembered the Wieser name from a previous surveillance of Ronald Marsh, a suspected drug dealer.

Marsh previously came to the attention of the police when a one-pound package of methamphetamine was intercepted at a Federal Express office in Englewood, Colorado. Fingerprint testing disclosed that Marsh's fingerprints were on the package. Johnson, working in conjunction with the Drug Enforcement Administration, placed Marsh under surveillance and followed him after Marsh flew into Denver in March 1989. Marsh drove a pickup truck from Stapleton Airport to the defendant's apartment on West Jewell Avenue. The defendant and Marsh went to a so-called "head shop," which Johnson described as a store that sells "legal drug paraphernalia." Johnson, however, did not testify that he observed the wares sold in the particular store in question, nor did he describe any transaction inside the store involving the defendant or Marsh. After leaving the store, the defendant and Marsh then visited various other locations over the next three days, including the home of the person who leased the storage locker with the defendant. Marsh left town and returned to Denver a week later. The defendant picked Marsh up at the airport on Marsh's next visit to Denver, and both the defendant and Marsh went to various locations in the Denver area. Marsh left town after three days, and the defendant was not seen in his presence again. At no time during his surveillance did Agent Johnson observe the defendant or Marsh perform any illegal act.

After visiting with the storage company owner on July 18, and upon recalling Wieser's name from his previous surveillance of Marsh, Agent Johnson decided to conduct a dog sniff of the defendant's locker for drugs. The storage company owner gave Johnson permission to take a dog onto the premises for that purpose. Johnson brought a certified drug-sniffing dog to the storage company, and upon walking the dog in front of the door to Wieser's locker, Johnson observed that the dog alerted at the locker. Johnson then obtained a search warrant for the locker and recovered illegal drugs from the locker during the execution of the warrant.

At the conclusion of the evidence, the trial court, relying primarily upon this court's decision in *People v. Unruh*, 713 P.2d 370 (Colo.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986), held that the defendant had a subjective expectation of privacy in his locker, that this privacy expectation was reasonable under the Colorado Constitution, and that, consequently, the dog sniff of the defendant's locker constituted a search which required reasonable suspicion for its initi-

ation. The court also determined that the prosecution's evidence failed to establish that Officer Johnson had a reasonable suspicion to support the dog sniff.

## II.

This court has held that article II, section 7 of the Colorado Constitution provides greater privacy protection to Colorado citizens than the Fourth Amendment of the United States Constitution. *E.g., People v. Oates,* 698 P.2d 811 (Colo.1985) (government-installed beeper in commercially purchased item is a search under Colorado Constitution); *People v. Corr,* 682 P.2d 20 (Colo.), *cert denied,* 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984) (government use of telephone toll records is a search under Colorado Constitution); *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (governmental installation of pen register is a search under Colorado Constitution); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980) (governmental seizure of bank records is an intrusion protected by the Colorado Constitution). In *People v. Unruh,* 713 P.2d 370, we specifically addressed whether a dog sniff constituted a search. In *Unruh,* a police officer found a car abandoned with a safe visible in the trunk. It was determined that the safe had been stolen in the burglary of a particular house. The front door of the house was open, the door jamb was splintered, and no one was present inside. After entering the house, a detective located the closet from which the safe apparently had been taken and observed what appeared to be drug paraphernalia and a white residue in the closet. The detective, suspecting that the safe contained drugs, subjected the safe to a dog sniff at the police station. The dog responded to the safe by pawing at it, and the detective obtained a warrant to open the safe. Execution of the warrant resulted in the seizure of illegal drugs from the safe. One of the issues before us in *Unruh* was whether the dog sniff of the safe constituted a search. In holding that it did, we acknowledged that the Colorado Constitution provides greater privacy protections than the United States Constitution and reasoned as follows:

Whether a dog sniff constitutes a search turns first on whether it was an intrusion into something that the individual reasonably expected to be private. The analysis in many of the dog sniff cases has stopped with the determination that a dog sniff, much less intrusive than a typical search, is not an invasion of a reasonable expectation of privacy.... Conceding that dog sniffs are less intrusive than other types of investigative techniques, we still must consider whether the limited intrusiveness of the sniff is an invasion of a reasonable expectation of privacy. Most of the cases in which courts have concluded that a dog sniff is not a search have involved either luggage or closed containers in an airport where, for safety reasons, people may expect their luggage or parcels to be subject to some type of governmental inspection....

Although we need not make the decision in this case, it may well be, as the majority of courts have held, that when a dog is used to sniff luggage or parcels at an airport, the sniff does not constitute a search because the persons whose luggage or parcels are sniffed have no reasonable expectation of privacy from an investigative technique as non-intrusive as a dog sniff. However, the facts of the case before us do not lend themselves to the same mode of resolution because the defendant, or anyone in his situation, could have no expectation that the privacy provided by a locked safe in his basement would be subject to a governmental investigative technique of any sort. Therefore, we determine that, because the defendant had a reasonable expectation of privacy in the safe, the dog sniff was a search.

713 P.2d at 377–78 (citations and footnote omitted). We then determined in *Unruh* that a dog sniff, although a search, was a limited form of intrusion that required reasonable suspicion, rather than probable cause, for its initiation. 713 P.2d at 379.

Our decision in *Unruh* is not without support in cases from other jurisdictions. For example, in *Commonwealth v. John-*

ston, 515 Pa. 454, 530 A.2d 74 (1987), the Pennsylvania Supreme Court held that a dog sniff of a storage locker constituted a search that required reasonable and articulable grounds for believing that contraband may be present in the locker. Similarly, in *People v. Evans*, 65 Cal.App.3d 924, 134 Cal.Rptr. 436 (1977), the court held that "a search with canines conducted without some preknowledge or reasonably strong suspicion that contraband is to be found in a particular place [storage locker] is a constitutionally impermissible invasion of the suspects' reasonable expectations of privacy." *See also Pooley v. State*, 705 P.2d 1293 (Alaska App.1985) (dog sniff is a minimally intrusive search under Alaska Constitution and requires reasonable suspicion); *State v. Kosta*, 75 Or.App. 713, 708 P.2d 365 (1985); *affirmed on other grounds*, 304 Or. 549, 748 P.2d 72 (1987) (under Oregon Constitution, dog sniff valid if police have reasonable suspicion).[1]

■ In concluding that the dog sniff in this case was not a search, Justice Vollack's opinion does not dispute the fact that the defendant had a subjective expectation of privacy in his storage locker. Relying on the United States Supreme Court's decision in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), Justice Vollack's opinion turns this case on the proposition that the defendant's privacy expectation was not legitimate because the sniff took place in "a public right of way" and was not one that society is prepared to consider reasonable. I disagree with that analysis for several reasons.

Although the storage company's lockers obviously were available to the public for rental, I fail to see how the access way inside the storage facility complex constituted a "public" right of way. The access area was not the equivalent of a city street available to the public at large, but rather was accessible only to lessees after logging in at the storage facility. More importantly, I view any reliance on *Place* as misplaced. In *Place*, the Supreme Court concluded that the exposure of a person's luggage to a dog sniff in a public airport did not constitute a "search" within the meaning of the Fourth Amendment to the United States Constitution, but then went on to hold that the 90–minute detention of the luggage was unreasonable and that the evidence obtained from the sniff was constitutionally inadmissible. In reaching its conclusion that the dog sniff did not constitute a search, the Court was interpreting the United States Constitution. The district court's suppression ruling in the instant case was based on the Colorado Constitution.

Furthermore, the facts in *Place* are clearly distinguishable from the present case. The defendant in *Place* was detained at an airport, after having aroused the suspicions of the police in Miami, and his bags were subjected to a dog sniff in another public airport. As we noted in *Unruh*, a person bringing luggage to a public airport has a diminished expectation of privacy because, as everyone knows, baggage is subject to some type of governmental inspection prior to boarding a plane. In contrast to the facts in *Place*, however, Wieser leased a storage locker in a complex that was protected by a fence and secured by a gate. It goes without saying that people rent storage lockers for several reasons, including safeguarding their property against loss or damage and protecting their privacy interest in the property placed in

---

1. Two cases in which a dog sniff was determined not to be a search are readily distinguishable from the instant case. In *State v. Slowikowski*, 307 Or. 19, 761 P.2d 1315, 1320 (1988), the court held that "[t]here being no purposive intrusion into a protected area, there was no search." The court's analysis turned on the fact that the police were conducting a training session for the dog at a mini-storage facility with the permission of the owner when marijuana was inadvertently discovered by the police. The marijuana was placed by the police in a locker and the dog was released to find it. The dog, however, alerted to a different locker which also contained marijuana. In *United States v. Venema*, 563 F.2d 1003, 1006 (10th Cir.1977), the court held that a dog sniff of a storage locker was not a search because the defendant lost any reasonable expectation of privacy when the manager of the facility warned him that from time to time she allowed the police on the premises and permitted them to use their dogs for detecting marijuana.

the locker. A person renting a storage locker reasonably expects that the property stored therein will not be subject to a governmental search in the absence of a legitimate constitutional basis for such an intrusion. Even after *Place,* several federal circuit and district courts have not read that decision as expansively as Justice Vollack's opinion does here, but instead have required reasonable suspicion for a dog sniff intrusion under circumstances not involving an airport sniff of luggage. *See, e.g., United States v. Whitehead,* 849 F.2d 849 (4th Cir.1988) (dog sniff of train compartment requires reasonable suspicion); *United States v. Quinn,* 815 F.2d 153 (1st Cir.1987) (dog sniff of car for narcotics must be based on reasonable suspicion); *United States v. Thomas,* 757 F.2d 1359 (2nd Cir.) *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985) (dog sniff outside apartment door constituted a search requiring a warrant); *United States v. Morales,* 714 F.Supp. 1146 (D.N.M.1989) (dog sniff of vehicle stopped during roadblock check required reasonable suspicion); *United States v. Hill,* 701 F.Supp. 1522 (D.Kan.1988) (reasonable suspicion required for dog sniff of package).

A person who rents a padlocked storage locker, in my view, manifests a subjective expectation of privacy in the property secured within the locker and such expectation is one that should be recognized as reasonable under the Colorado Constitution. Ominous implications flow from a contrary holding. The rule espoused in Justice Vollack's opinion would permit a dog sniff unsupported by any cause whatever, reasonable or otherwise, on city streets as persons walk by, in the common ways of offices and apartment buildings, in parking lots where automobiles are parked and locked, and in countless other areas that persons reasonably expect are secure from a governmental intrusion calculated to determine the nature of property not exposed to public view. Although the government has an extremely important interest in enforcing drug laws, that interest should not be furthered at the expense of privacy interests that are intrinsic to free society. Because such interests are entitled to constitutional protection, I would hold that the dog sniff conducted by Agent Johnson in this case constituted a search for purposes of article II, section 7 of the Colorado Constitution.

### III.

After determining that the dog sniff constituted a limited form of search, the trial court, following this court's decision in *Unruh,* held that Agent Johnson did not have reasonable suspicion to initiate the dog sniff of the defendant's locker for drugs. I would affirm this aspect of the trial court's suppression ruling.

Reasonable suspicion requires that an officer be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, give rise to a reasonable suspicion that illegal drugs, contraband, or incriminating evidence will be found in the place sought to be searched. *E.g., People v. Ratcliff,* 778 P.2d 1371, 1376–77 (Colo.1989); *People v. Melgosa,* 753 P.2d 221, 225–26 (Colo.1988). The facts on which Agent Johnson relied in conducting the dog sniff consisted of the following: that the defendant had been in the company of Marsh, a suspected drug dealer, on two separate occasions; that on one of those occasions the defendant and Marsh went to a so-called "head shop"; that the defendant and Marsh on one occasion briefly visited the home of the co-lessee of the defendant's storage locker; and that the defendant made several visits to his locker by motorcycle for short periods of time while carrying only a backpack. In my view, the trial court's resolution of the reasonable suspicion issue finds support in the record and should be accorded deference by this court.

While Agent Johnson may have suspected that the defendant might possibly be in possession of illegal drugs, he was not able to offer the specific and articulable facts necessary to elevate his bare suspicion into a reasonable one. The defendant's occasional association with Marsh, a suspected drug dealer, added nothing more than a "guilt by association"—a standard that has never been an accepted constitutional basis

for a search. *See Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *People v. Foster,* 788 P.2d 825 (Colo.1990); *People v. Branin,* 188 Colo. 235, 533 P.2d 1138 (1975); *Mora v. People,* 178 Colo. 279, 496 P.2d 1045 (1972).

Nor did the fact that on a prior occasion Agent Johnson observed the defendant and Marsh enter what Johnson referred to as a "head shop" constitute or contribute to a reasonable suspicion that the defendant was in possession of illegal drugs. Johnson's characterization of a head shop as a store selling "legal drug paraphernalia" was without foundation in law or in fact. Colorado law does not recognize a form of drug paraphernalia that is "legal." Drug paraphernalia is contraband and includes all equipment, products, and material used, intended for use, or designed for cultivating, producing, concealing, or ingesting illegal controlled substance. § 12–22–502(2), 5 C.R.S. (1989 Supp.). The possession, sale, or delivery of drug paraphernalia is a crime under Colorado law. §§ 12–22–504 & 505, 5 C.R.S. (1989 Supp). The record in this case is barren of any evidence establishing that the so-called "head shop" was engaged in the sale of drug paraphernalia. Under these circumstances, it reasonably should be presumed that the store in question, which was open to the public, was not engaged in the sale of illegal products. Moreover, Agent Johnson, as a matter of undisputed fact, never testified that he saw Marsh or the defendant purchase any item or engage in any illegal activity inside the store.

Similarly, the visit by the defendant and Marsh to the home of the co-lessee of the defendant's storage locker did not serve to implicate the defendant, or the co-lessee for that matter, in illegal drug activity. It indeed would be a strange state of affairs if the defendant shared a storage locker with a stranger and did not visit occasionally with his co-lessee. Again, Agent Johnson witnessed nothing suggestive of any illegality during the defendant's and Marsh's visit to the home of the co-lessee.

The further fact that the defendant made frequent visits to his storage locker contributed nothing to the "reasonable suspicion" calculus, especially in light of Agent Johnson's acknowledgement that this was not an unusual practice for a person leasing a storage locker. Finally, the defendant's use of a backpack was of no more significance than was his use of a motorcycle as a means of transportation.

Where, as here, the trial court has applied the correct legal standard in resolving a suppression motion and the court's ruling is supported by the factual state of the record, there is no basis in law or fact for this court to overturn the trial court's resolution of the suppression motion. *E.g., People v. Trujillo,* 784 P.2d 788, 792 (Colo. 1990); *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987). I therefore would affirm the suppression ruling.

Justice LOHR specially concurring:

I join in parts I and II of Justice Quinn's dissent. I am persuaded, however, that the search by the drug-sniffing dog was supported by a reasonable suspicion that illegal drugs would be found in the storage locker. Accordingly, I also join Justice Mullarkey's opinion concurring in the judgment of the court. The court's judgment reverses the order of the district court suppressing evidence obtained from a search of the locker.